AUGUST GOEBEL AND THEODORE GORENFLO v. ALEXANDER R. LINN AND WILLIAM F. LINN.

*Contract—Duress—Novation—Consideration.*

Defendants were large brewers, and had a contract with an ice company to supply them with ice during the season of 1880 at one dollar seventy-five cents a ton, or two dollars if the crop was short. The contract was made in November, 1879. The following winter was so mild that the ice crop was a failure. In May defendants were notified by the ice company that no more ice would be furnished them under the contract. Defendants had then on hand a considerable amount of beer that would be spoiled without ice, and under stress of the circumstances they made a new arrangement with the ice company, and agreed to pay $3.50 per ton for the ice. At this rate ice was received and paid for afterwards. A note given for ice at this rate in October being sued, defendants disputed its validity, claiming that it was obtained without consideration and under duress.

*Held,* 1. That it was entirely competent for the parties to enter into the new arrangement if they saw fit. *Moore v. Detroit Locomotive Works* 14 Mich. 266.

2. That the note was not without consideration, being given for ice received.

3. That the refusal of the ice company to perform its contract, and the exaction of a higher price, was not legal duress. *Hackley v. Headley* 45 Mich. 569.

Error to Superior Court of Detroit. Submitted January 11. Decided January 18.

ASSUMPSIT. Defendants bring error. Affirmed.

*Maybury & Conely* and *Fred. A. Baker* for plaintiffs in error.

*Jno. Atkinson* and *C. J. Reilly* for defendants in error. Duress is not shown in this case: 6 Wait's Actions 658; *Miller v. Miller* 68 Penn. St. 486; there was sufficient consideration for the new contract in its mutuality and in the rescission of the first: *Cutter v. Cochrane* 116 Mass. 409; *Rollins v. Marsh* 128 Mass. 116.

COOLEY, J. The action in this case is upon a promissory note given by defendants, October 20, 1880, to the Belle Isle Ice Co., and by that company transferred to the plaintiffs after it fell due. The execution of the note is admitted, and the only question in the case is, whether the defendants have established any defence to it.

The defence set up is that the note was obtained without consideration, and by means of duress. The facts which are supposed to show duress are the following:

November 8, 1879, the Belle Isle Ice Co. entered into a contract with the defendants below, who are brewers in the city of Detroit, whereby the company undertook to furnish defendants at their brewery all the ice they might need for their business from that date until January 1, 1881. The ice was to be delivered on orders, and the price was to be one dollar seventy-five cents per ton, and in case of the scarcity of ice during the season of 1880, two dollars per ton. Ice was furnished under this contract until May, 1880, when defendants were notified by Mr. Lorman, the manager or president of the ice company, that owing to the failure of the ice crop the preceding winter the company could and would furnish no more at the price stipulated. Other brewers in the city who held similar contracts received the like notification. This led to a meeting of several of the brewers with the president of the company and one of his

associates, at which the brewers were informed that instructions were given to the teamsters of the company to deliver no more ice until the parties had agreed to pay more for it. Five dollars a ton was at first demanded, but the company finally agreed to deliver for three dollars and a half. Mr. Goebel who was a witness on behalf of the defendants explained the situation thus: "We had to pay most anything, if they asked twenty dollars; if we had no ice one day or two, if we had been without ice, all our stock would have been spoiled; if we hadn't ice for two days, all our stock of beer would have been spoiled; we cannot run our business one day without ice; it would spoil our beer; it cools the cellar and cools the beer. At that time I could not procure ice of anybody; they waited just long enough not to give us a chance to buy ice of anybody else; * * * we could not contract with anybody for ice as there was not any; all ice was contracted for then; all the ice of the icemen right here in this market; there were several men came over who had boat loads to sell and offered us ice; I told Lorman we had a chance to buy ice, and he told us we should not; he would see our contract filled; this was during the spring months, before this conversation. At the time of this conversation no ice was obtainable in this market; not in such large quantities as we wanted. * * * We never had less than 2000 or 3000 barrels of beer on hand. At 2500 at $6 a barrel would be $15,000, which would have been an entire loss, besides ruining the whole business, the whole trade; we could not have had any customers; we could not have brewed any more; the brewing would have stopped also." The consequence was, as he says, that they were forced to assent to the terms imposed upon them. From that time defendants paid $3.50 per ton for the ice as it was delivered to them, up to the first day of January following. Notes were given for the ice at this rate from time to time, and, with the exception of the one in suit, paid as they fell due. This statement is a sufficient presentation of the facts for the purposes of a decision. The defendants claim a set-off of the sums paid by them for ice in excess of two dollars a ton.

It is very manifest that there is no ground for saying that the note in suit was given without consideration. It was given for ice which was furnished by the payee to the defendants; which was owned by the payee and bought by the defendants, and for which defendants concede their liability to make payment. What the defendants dispute is, the justice of compelling them to pay the sum stipulated in the note when according to their previous contract they ought to have received the ice for a sum much smaller. The defence, therefore, is not that the consideration has failed, but that a note for a sum greater than the contract price has been extorted under circumstances amounting to duress.

It is to be observed of these circumstances that if we confine our attention to the very time when the arrangement for an increased price was made the defendants make out a very plausible case. They had then a very considerable stock of beer on hand, and the case they make is one in which they must have ice at any cost, or they must fail in business. If the ice company had the ability to perform their contract, but took advantage of the circumstances to extort a higher price from the necessities of the defendants, its conduct was reprehensible, and it would perhaps have been in the interest of good morals if defendants had temporarily submitted to the loss and brought suit against the ice company on their contract. No one disputes that at their option they might have taken that course, and that the ice company would have been responsible for all damages legally attributable to the breach of its contract.

But the defendants did not elect to take that course. They chose for reasons which they must have deemed sufficient at the time to submit to the company's demand and pay the increased price rather than rely upon their strict rights under the existing contract. What these reasons were is not explained to us except as above shown. It is obvious that there might be reasons that would go beyond the immediate injury to the business. Suppose, for example, the defendants had satisfied themselves that the ice com-

pany under the very extraordinary circumstances of the entire failure of the local crop of ice must be ruined if their existing contracts were to be insisted upon, and must be utterly unable to respond in damages; it is plain that then, whether they chose to rely upon their contract or not, it could have been of little or no value to them. Unexpected and extraordinary circumstances had rendered the contract worthless; and they must either make a new arrangement, or, in insisting on holding the ice company to the existing contract, they would ruin the ice company and thereby at the same time ruin themselves. It would be very strange if under such a condition of things the existing contract, which unexpected events had rendered of no value, could stand in the way of a new arrangement, and constitute a bar to any new contract which should provide for a price that would enable both parties to save their interests.

We do not know that the condition of things was as supposed, but that it may have been is plain enough. What is certain is, that the parties immediately concerned and who knew all the facts, joined in making a new arrangement out of which the note in suit has grown. The case of *Moore v. Detroit Locomotive Works* 14 Mich. 266, where a similar case was fully considered, is ample authority for supporting the new arrangement.

If unfair advantage was taken of defendants, whereby they were forced into a contract against their interests, it is very remarkable that they submitted to abide by it as they did for nearly eight months without in the meantime taking any steps for their protection. Whatever compulsion there was in the case was to be found in the danger to their business in consequence of the threat made at the beginning of May to cut off the supply of ice; but the force of the threat would be broken the moment they could make arrangements for a supply elsewhere; and there is no showing that such a supply was unattainable. The force of the threat was therefore temporary; and the defendants, as soon as they were able to supply their needs elsewhere, might have been in position to act independently, and to deal with the

ice company as freely as they might with any other party who declined to keep his engagements. On any view, therefore, which we may take of the law, the defence must fail.

But if our attention were to be restricted to the very day when notice was given that ice would no longer be supplied at the contract price, we could not agree that the case was one of duress. It is not shown to be a case even of a hard bargain; and the price charged was probably not too much under the circumstances. But for the pre-existing contract the one now questioned would probably have been fair enough, and if made with any other party would not have been complained of. The duress is therefore to be found in the refusal to keep the previous engagements. How far this falls short of legal duress was so recently considered by us in *Hackley & McGordon v. Headley* 45 Mich. 569, that further discussion now would serve no valuable purpose. In that case there was a dispute respecting the amount of a debt. The debtor refused to pay unless the creditor would accept in full the amount conceded by him to be owing. The creditor insisted that a large sum was due him, but being in immediate need of money, the circumstances were such that he felt compelled, as he claimed, to accept the sum offered. Afterwards he repudiated the arrangement, as having been made under duress. This court on a careful examination of the authorities, found no support for the claim in legal principles. The following language made use of in disposing of the case is not without relevancy here : " In what did the alleged duress consist in the present case ? Merely in this : that the debtors refused to pay on demand a debt already due, though the plaintiff was in great need of the money and might be financially ruined in case he failed to obtain it. It is not pretended that Hackley & McGordon had done anything to bring Headley to the condition which made this money so important to him at this very time, or that they were in any manner responsible for his pecuniary embarassment except as they failed to pay this demand. The duress, then, is to be found exclusively in their failure to

meet promptly their pecuniary obligation. But this, according to the plaintiff's claim, would have constituted no duress whatever if he had not happened to be in pecuniary straits; and the validity of negotiations, according to this claim, must be determined, not by the defendant's conduct, but by the plaintiff's necessities. The same contract which would be valid if made with a man easy in his circumstances, becomes invalid when the contracting party is pressed with the necessity of immediately meeting his bank paper. But this would be a most dangerous, as well as a most unequal doctrine; and if accepted, no one could well know when he would be safe in dealing on the ordinary terms of negotiation with a party who professed to be in great need."

We are of opinion that the defence failed, and that the judgment should be affirmed with costs.

The other Justices concurred.