## SKINNER v. GARNETT GOLD–MIN. CO.

(Circuit Court, N. D. California. September 6, 1899.)

### No. 12,551.

1. STATUTES—TITLE OF ACT.
    Const. Cal. art. 4, § 24, providing that every act shall embrace but one subject, which shall be expressed in its title, as construed by the supreme court of the state, does not require the title of an act to be an abstract of its contents, and a provision intended to secure the enforcement of the act and the accomplishment of the general purpose of the legislation is germane to the subject-matter and valid though not enumerated in the title.

2. CONSTITUTIONAL LAW—SPECIAL PRIVILEGES—ACT AFFECTING CORPORATIONS.
    Sections 1 and 2 of the California act relating to corporations (St. 1897, p. 231), which require all corporations doing business in the state to pay their employés at least once a month the wages earned during the preceding month, and provide that the violation of such requirement shall entitle an employé to a lien for his wages on the property of the corporation, taking precedence of all other liens except recorded mortgages or deeds of trust, to an attachment, and a reasonable attorney's fee in case of a suit to collect his wages or enforce such lien, and that an unrecorded deed shall be no defense to such suit, do not discriminate unjustly against corporations, in violation of the state constitution (article 1, § 21), prohibiting the granting of special privileges or immunities to any citizens or class of citizens.

3. SAME—EQUAL PROTECTION OF LAW.
    Nor do such provisions deny to corporations the equal protection of the law, within the prohibition of the fourteenth amendment to the federal constitution.

4. SAME—DUE PROCESS OF LAW.
    Nor do such provisions deprive corporations of their property without due process of law, within the meaning of the state constitution (article 1, § 13), by interfering with their freedom to make contracts.

5. CONTRACT—AGREEMENT FOR EXTENSION ON PART PAYMENT.
    Part payment of wages due employés is not a good consideration for an agreement to extend the time for payment of the remainder.

This is an action by attachment under the California statute to recover wages from a corporation. On final hearing.

F. D. Soward and Whitworth & Shurtleff, for plaintiff.

Grove L. Johnson, Linforth & Whitaker, and W. W. Watson, for defendant.

MORROW, Circuit Judge. This is an action at law to recover from the corporation defendant for labor performed by plaintiff, and on assigned claims for labor performed by others. The defendant corporation is organized and exists under the laws of West Virginia. The action was originally brought in the superior court of the county of Sierra, state of California, and was transferred to this court upon

the petition of the defendant. For cause of action plaintiff alleges that the defendant is a corporation existing under the laws of West Virginia, possessing property and doing business in the state of California; that defendant is indebted to plaintiff in the sum of $163.78 on account of work performed by plaintiff by the month as a laborer upon defendant's mine, the Niagara Consolidated or Garnett mine, at Hepsidan, Sierra county, Cal., between January 1 and December 14, 1897; that no part of this indebtedness has been paid; that defendant is indebted to 46 other persons in various sums on account of work performed by them on defendant's mine between January 1 and December 14, 1897; that these various sums have all been assigned by these persons to plaintiff, and that no part of them has ever been paid; that the amounts due to the plaintiff and his assignors are due to them from the defendant Garnett Gold-Mining Company for wages earned by them as laborers for said defendant between January 1 and December 14, 1897, in working upon the Niagara Consolidated or Garnett mine under an agreement by which they became due and were payable monthly; that defendant promised to pay them monthly, but did not do so, and during the whole period it had no regular pay day, and no day selected therefor, within the meaning of an act of the legislature of California entitled "An act requiring every corporation doing business in this state to pay their employés and each of them at least once in each and every month the wages earned by such employé," etc. St. Cal. 1897, p. 231. Plaintiff demands judgment for the sum of $3,981.50, with legal interest thereon (7 per cent.) from December 14, 1897, and costs of suit, that an attachment issue against defendant, that plaintiff be allowed a reasonable attorney's fee of $500, and that the whole be adjudged a first lien upon the property of defendant. An attachment was issued and levied upon the property of defendant in the county of Sierra, in this state, and a lis pendens was recorded in the office of the county recorder. Thereafter the case was transferred to this court on the ground that defendant, being a foreign corporation, was a nonresident of this state. Defendant denies, generally and specifically, the allegations in the several counts of the complaint, and alleges that plaintiff and his assignors were employed by defendant under an agreement whereby they each and all agreed that they would take their pay from the proceeds of defendant's mine, which was being worked by them; that they would not ask or receive or expect that their wages would be paid monthly or regularly, or upon any day selected for that purpose, and that they would not ask or receive or expect any pay for their work done until February, 1898, and that they would not bring suit to recover pay for their work until February, 1898; denies that plaintiff is entitled to any sum as attorney's fee; and alleges that, if plaintiff is entitled to any attorney's fee for the prosecution of this action, $200 would be a reasonable attorney's fee. The essential facts are admitted by both parties. It is agreed that the amount claimed by plaintiff, namely, $3,981.50, is owed by defendant. The defendant, however, claims that as to all unpaid wages earned prior to August 23, 1897, an agreement was entered into between plaintiff and his assignors and defendant on or about October 9,

1897, by which plaintiff and his assignors agreed to wait for six months after August 23, 1897, for such unpaid wages. It is agreed that plaintiff is entitled to a judgment for all wages earned subsequent to August 23, 1897, amounting to $2,167.02, together with the legal interest thereon. With regard to the remaining sum of $1,814.48, due for wages earned prior to August 23, 1897, called "back pay," defendant claims that the action has been prematurely brought. Defendant further contends that the statute involved (St. Cal. 1897, p. 231) is unconstitutional. The title of the act the benefit of which has been claimed by plaintiff, and the constitutionality of which defendant contests, reads:

"An act requiring every corporation doing business in this state to pay their employés and each of them at least once in each and every month, the wages earned by such employé; to limit the defenses which may be set up by such corporation to assignments of wages, set-off or counterclaims, or the absence of such employés at the time of making payment, and in case of such absence the wages are payable upon demand; to prohibit assignments of wages for the purpose of evading the provisions of this act, and agreements to accept wages at longer periods than as herein provided as a condition of employment: to fix a penalty for this violation of the provisions of this act by such corporation, and to provide for the disposition of any fines recovered from corporations violating the same."

The purpose of the act is expressed in section 1, which provides that:

"Every corporation doing business in this state shall pay at least once a month each and every employé employed by such corporation in transacting or carrying on its business, or in the performance of labor for it, the wages earned by such employé during the preceding month: provided, however, that if at the time of payment any employé shall be absent, or not engaged in his usual employment, he shall be entitled to said payment at any time thereafter upon demand."

The provisions of all the sections of this act, with the exception of sections 2 and 6, are referred to in the title as quoted above. Section 2 provides:

"A violation of any of the provisions of section 1 of this act shall entitle each of the said employés to a lien on all the property of said corporation for the amount of their wages, which lien shall take preference over all other liens, except duly recorded mortgages or deeds of trust; and in any action to recover the amount of such wages, or to enforce said lien, the plaintiff shall be entitled to a reasonable attorney's fee, to be fixed by the court, and which shall form part of the judgment in said action, and shall also be entitled to an attachment against said property. An unrecorded deed shall be no defense to such actions."

Section 6 is as follows:

"All wages earned by any employés engaged in the service of any corporation in this state, shall be paid in lawful moneys of the United States or in checks negotiable at face value on demand."

The constitution of California (section 24, art. 4) declares that "every act shall embrace but one subject, which subject shall be expressed in its title." Defendant contends that, since the provisions of sections 2 and 6 of the above act are not specifically referred to in its title, these two sections are unconstitutional. The unconstitutionality of these two sections, even if established, does not invalidate

the entire act, but merely the sections involved. Section 24, art. 4, of the constitution of California, also provides:

"But if any subject shall be embraced in an act which shall not be expressed in its title, such act shall be void only as to so much thereof as shall not be expressed in the title."

In connection with which constitutional provision, see, also, Robinson v. Bidwell, 22 Cal. 379, 387; People v. Perry, 79 Cal. 105, 114, 21 Pac. 423.

It will be observed that we are not concerned with section 6 in the present controversy, and it may therefore be omitted from consideration. The subject of the act is comprised in section 1, which enacts that corporations shall pay their employés regularly each month. The other sections contain provisions designed to secure compliance with section 1, and section 2 provides a penalty for the violation of this section. Two sections in this act (sections 2 and 7) provide against violation of its provisions. Section 2 declares that "a violation of any of the provisions of section 1 of this act shall entitle each of the said employés to a lien on the property of said corporation for the amount of their wages," etc. Section 7 enacts that "any corporation violating any of the provisions of this act shall be subject to a fine not exceeding one hundred dollars, or less than fifty dollars, for each violation." It is evident that these sections are intended to enforce compliance with the regulations of the act regarding its subject comprised in section 1, and there is, consequently, no reason why their provisions should have found expression in the title of the act. In Ex parte Kohler, 74 Cal. 38, 41, 15 Pac. 436, 437, Justice Paterson, delivering the opinion of the supreme court, said:

"However numerous the provisions of an act may be, if they can fairly be considered as falling within the subject-matter of legislation, or as proper method for the attainment of the end sought by the act, there is no conflict with the constitutional provision above quoted [Const. Cal. art. 4, § 24]. In any event, it is only where there is a clear violation of the constitution that this court is justified in declaring it unconstitutional. * * * Manifestly, the provisions of the act all fall within the subject named in its title, and are necessary and logical methods for the end desired by the legislature. The act, therefore, is not repugnant to article 4, § 24, supra."

Again, in Ex parte Liddell, 93 Cal. 633, 637, 29 Pac. 251, 252, the constitutionality of a statute was attacked upon the ground that the legislature had failed to express the subject of the act in its title. The supreme court said:

"In Abeel v. Clark, 84 Cal. 229, 24 Pac. 383, we held it was not necessary that the title of the act should embrace an abstract of its contents. The cases cited therein show that such is the view taken by the courts of other states; and on reflection it must appear that this conclusion is based upon the soundest principles of constitutional construction. It certainly was not intended that the title should be a repetition of the provisions found in the body of the bill. The object was to prevent deception by the inclusion of matters incongruous with the subject specified in the title. If the title contains a reasonable intimation of the matters under legislative consideration, the public cannot complain. It has always been the custom to state the subject of a bill in general terms, and with the fewest words, and the framers of the constitution doubtless intended the legislature to conform to that custom. Mills v. Charleton, 29 Wis. 409; Bright v. McCullough, 27 Ind. 226; People v. Mahaney, 13 Mich. 494. Numerous provisions having one general object fairly indicated

by the title may be united. Montclair v. Ramsdell, 107 U. S. 147, 2 Sup. Ct. 391. When the general purpose of the act is declared, the details provided for the accomplishment of that purpose will be regarded as necessary incidents."

See, also, Hellman v. Shoulters, 114 Cal. 150, 44 Pac. 915, and 45 Pac. 1057.

Defendant's contention, therefore, that section 2 of the statute in question (St. Cal. 1897, p. 231) is unconstitutional because there is no mention of its provisions in the title of the act, cannot be sustained, in face of the interpretation placed by the supreme court of this state upon section 24, art. 4, of the constitution.

Defendant further attacks the statute in question upon the ground that it contravenes the following provisions of the constitution of the state: (1) Section 13, art. 1: "No person shall * * * be deprived of life, liberty, or property without due process of law." (2) Section 1, Id.: "All men * * * have certain inalienable rights, among which are those of * * * acquiring, possessing, and protecting property." (3) Section 21, Id.: "Nor shall any citizen, or class of citizens, be granted privileges or immunities which, upon the same terms, shall not be granted to all citizens." (4) Fourteenth amendment to the constitution of the United States: "Nor shall any state deny to any person within its jurisdiction the equal protection of the law." Defendant contends that the statute discriminates unreasonably against corporations, and destroys the liberty and property of private contracts in several of its provisions. Section 2 of the act, supra, which provides that the violation of the provisions of section 1 shall entitle the employé to a lien on the property of the corporation taking precedence of all liens except recorded mortgages and deeds of trust, to a reasonable attorney's fee, and to an attachment, and, further, that an unrecorded deed shall be no defense to an action for the recovery of wages, is regarded by defendant as an unjust discrimination against corporations. Defendant also regards section 3 of the same statute from the same standpoint. This section limits the defenses which may be set forth by a corporation defendant in an action against it for a violation of the provisions of this act. This section, however, may be disregarded as not being concerned in the matter now at issue in this case. In support of its position defendant cities San Mateo Co. v. Southern Pac. R. Co., 13 Fed. 722, known as "The Railroad Tax Cases." That was an action for the recovery of state and county taxes claimed to be due from defendant to plaintiff for the fiscal year 1881–82. Defendant insisted that in the assessment of its property an unjust discrimination was made between its property and the property of individuals, to its disadvantage, since it "was not allowed any deduction from the valuation of its property for the mortgage thereon which is allowed for mortgages in the assessment of the property of individuals." Justice Field held that such discrimination was unconstitutional, and that corporations hold their lawfully-acquired property under the same constitutional guaranties as protect the property of natural persons. The principle involved is admirably and concisely stated as follows:

"It is sufficient to add that in all text writers, in all codes, and in all revised statutes it is laid down that the term 'person' includes or may include corporations, which amounts to what we have already said, that, whenever it is necessary for the protection of contract or property rights, the courts will look through the ideal entity and name of the corporation to the persons who compose it, and protect them, though the process be in its name. All the guaranties and safeguards of the constitution for the protection of property possessed by individuals may therefore be invoked for the protection of the property of corporations; and as no discriminating and partial legislation imposing unequal burdens upon the property of individuals would be valid under the fourteenth amendment, so no legislation imposing such unequal burdens upon the property of corporations can be maintained. The taxation, therefore, of the property of the defendant upon an assessment of its value, without a deduction of the mortgage thereon, is to that extent invalid." Id. 747.

It will be perceived that the case under discussion bears no resemblance to the case cited above. In that case there was a direct attack upon the property of corporations, an attempt to make corporations submit to a system of taxation different from that generally employed in this state, and to saddle them with more than their proper share of the burdens of state taxation. In this case no peculiar burden is imposed. The statute in question merely provides for the payment of wages already due at certain regular periods, and lays down regulations framed to secure compliance with its provisions in this respect.

Mining corporations have been the objects of legislation as such, on the part of this state, as evidenced by St. Cal. 1873–74, p. 866, St. Cal. 1880, p. 134, and St. Cal. 1897, p. 38. These statutes have directed the performance of certain duties, and the statute of 1880 imposed a penalty of $1,000 upon mining corporations violating its provisions.

The case of Miles v. Woodward, 115 Cal. 308, 46 Pac. 1076, arose under the latter statute. The court in that case said:

"If the construction which appellant puts upon the act, namely, that it applies only to those mining corporations which extract gold or silver from ores and quartz, were to be accepted as the true one, his attack upon the constitutionality of this law as being arbitrary special legislation would certainly be powerful, if not irresistible. But we cannot agree to that interpretation. The act provides for the doing of many things by the officers and agents of all mining corporations. Some of the things required to be done, such as keeping a complete set of books, showing all receipts and expenditures of the corporation, the source of such receipts and objects of such expenditures, and all transfers of stock, are acts which may be performed by, and the doing of which is therefore properly imposed upon, all mining corporations. The provision requiring the superintendent to report weekly the number of men employed by him, and the rate of wages paid to each, likewise applies to all mining corporations. * * * These requirements, from their nature, apply only to those mining corporations which extract the precious metals from ore, but they apply to all such corporations, and are as general as from the varying character of mining corporations, and of their operations, they could be made."

An act approved March 31, 1891 (St. Cal. 1891, p. 195), is entitled "An act to provide for the payment of the wages of mechanics and laborers employed by corporations." This act provides (section 1):

"Every corporation doing business in this state shall pay the mechanics and laborers employed by it the wages earned by and due them weekly or monthly, on such day in each week or month as shall be selected by said corporation."

Section 2 of this act enacts as a penalty for the violation of the provisions of this act that such violation shall entitle each mechanic or laborer to a lien on the property of the corporation, taking preference over all other liens except recorded mortgages and deeds of trust, to a reasonable attorney's fee in the event of an action to recover his wages or to enforce his lien, and to an attachment against the property of the corporation.    This act has been construed in the following cases: Keener v. Irrigation Co., 110 Cal. 627, 43 Pac. 14; Ackley v. Mining Co., 112 Cal. 42, 44 Pac. 330; Slocum v. Irrigation Co., 122 Cal. 555, 55 Pac. 403.

In Keener v. Irrigation Co., the plaintiff was employed to perform labor upon certain reservoirs at different times between May 27, 1892, and June 23, 1893, in the course of which employment the wages earned by him amounted in the aggregate to $868.75.    Of this he was paid by the company $378.82, whereupon he brought action to recover the balance, and have it adjudged a lien upon defendant's property.    Plaintiff obtained a judgment by default, and defendant appealed.    In the opinion it is said, at page 630, 110 Cal., and page 14, 43 Pac.:

"By the terms of the first section of this act, it does not apply to all corporations, but only to those who, while doing business in this state, employ laborers and mechanics by the week or month, whose wages, under the terms of their employment, are payable weekly or monthly.    It does not purport to impose upon those corporations any duty or liability towards all the mechanics or laborers whom it may employ, or to create a right in favor of those of its employés whose wages are not earned or payable by the week or by the month.    As a remedy sought to be enforced herein exists only by virtue of the statute, it was incumbent upon the plaintiff to bring himself within the terms of the statute, and to show that the wages earned by him were 'due weekly or monthly.'    His complaint is, however, defective in this respect, and contains no allegation concerning the times at which the wages were payable, or that he was employed at weekly or monthly wages; and, from the allegations in reference thereto, it would seem that there was no agreement upon this point,—the greater part of his labor being computed by the day, and at different rates per day, for different periods during the year."

It was accordingly held that the plaintiff was not entitled to avail himself of the provisions of the act of 1891.

In the case of Ackley v. Mining Co., the plaintiff had judgment against the corporation for $397 for wages, a counsel fee of $100, and costs, taxed at $27.35, making a total of $524.35, which was declared to be a valid lien upon the property of the corporation defendant, and paramount to any lien or interest of the other defendants.    The court said:

"There is no allegation or finding that the plaintiff was employed by the week or month, or that his wages were 'due weekly or monthly.' "

Then follows a citation from the case of Keener v. Irrigation Co., as quoted above, and, following that case, it was determined that the plaintiff was not entitled to avail himself of the provisions of the act of 1891.

Slocum v. Irrigation Co. was an appeal by the receivers of the corporation defendant from a judgment asserting and enforcing liens of plaintiffs upon the property of the said corporation.    These liens were based upon the statute of 1891.    Appellants contended that the

statute in question was unconstitutional, because, among other reasons, it was special legislation, in that it attempted to provide for the creation of liens in favor of a special class of laborers, and, as the court said, "thus attempts a mere arbitrary classification, not founded upon natural differences, or differences defined by the constitution, within the meaning of the principle as declared in Darcy v. City of San José, 104 Cal. 642, 38 Pac. 500, and other decisions of this court to the same point.    This contention is correct, if the said act provides a lien only for those laborers and mechanics who are employed by the week or month, and does not provide liens for those who are not thus employed.    But this court has already declared such to be the construction of the act in two cases,—one decided by one department of this court, and the other by the other department,"—citing the cases of Keener v. Irrigation Co. and Ackley v. Mining Co., supra.    Chief Justice Beatty dissented from this opinion, however, holding that the statute might be held to mean "that every corporation employing laborers and mechanics is required to establish a regular pay day in each week, or in each month, as it may elect, and on that day to pay all wages then earned and due, no matter what the term of employment."    As thus construed, the statute would be constitutional.

The statute of 1897 appears to dispose of the constitutional objection urged against the act of 1891.    The statute of 1891 was declared unconstitutional because of its arbitrary classification of laborers, according to which those who were employed by the week or month enjoyed advantages over those not so employed.    The statute of 1897 provides specifically that all employés of corporations shall be paid at least once a month, and makes no such discrimination as the statute of 1891, but entitles all employés of corporations to the same remedies.    The question here is whether the statute of 1897 so discriminates between corporations and other persons as to render it unconstitutional for that reason.

A statute of Tennessee (Acts Tenn. 1883, p. 271) entitled "An act to provide for the regulation of railroad companies and persons operating railroads in this state; to prevent discrimination upon railroads in this state and to provide for the punishment for the same; and to appoint a railroad commission," approved March 30, 1883, imposed certain penalties upon corporations operating railroads for violation of the provisions of the act, and did not impose such penalties upon companies or private persons operating railroads who had violated that statute; and provided that a corporation, under certain circumstances, should be held prima facie guilty of extortion, and made no such provision in the case of persons other than corporations operating railroads.    This statute was under consideration in the case of Louisville & N. R. Co. v. Railroad Commission of Tennessee, 19 Fed. 679.    This was an action for preliminary injunction on the ground, among others, that the statute by authority of which defendants claimed to act was unconstitutional because of unjust discrimination against railroad corporations.    In the course of the opinion of the circuit court occurred the following, quoted by defendant in the present case:

"But it does not follow that the legislature can enact statutes applicable to other kinds of property as to railroads, and therein discriminate so as to impose heavier burdens on one than are imposed on the other. Certainly they cannot so distinguish as between different railroad companies or between railroad corporations and persons operating railroads in competition with them." Page 694.

Black's Law Dictionary defines a general law in the following terms:

"A general law, as contradistinguished from one that is special or local, is a law that embraces a class of subjects or places, and does not omit any subject or place naturally belonging to such class. Van Riper v. Parsons, 40 N. J. Law, 1." "A law framed in general terms, restricted to no locality, and operating equally upon all of a group of objects, which, having regard to the purposes of the legislation, are distinguished by characteristics sufficiently marked and important to make them a class by themselves, is not a special or local law, but a general law. Id. 123."

The statute in the above Tennessee case, in the light of these definitions, was properly considered as discriminating against railroad corporations. It professed to provide "for the regulation of railroad companies and persons operating railroads in this state," and in so providing it discriminated as regards penalties and in other respects against corporations operating railroads. Such a statute cannot be regarded as parallel with the California statute under consideration, nor can the language of the learned judge above quoted be considered as applicable to the present case. The California statute imposes certain legal duties upon corporations in general, and makes certain provisions intended to secure the performance of these duties by corporations. This interpretation of the statute as not being a special law is in accord with the decisions of the supreme court of this state.

In McDonald v. Conniff, 99 Cal. 386, 391, 34 Pac. 71, 73, Harrison, J., delivering the opinion of the court, said:

"It is not necessary that a law shall affect all people of the state in order that it may be general, or that a statute concerning procedure shall be applicable to every action that may be brought in the courts of the state. A statute which affects all the individuals of a class is a general law, while one which relates to particular persons or things of a class is special. A statute regulating the rights of married women, or which affects all mining corporations, or confers rights upon municipal corporations of a certain class, or places restrictions upon all foreign corporations, is a general law. City of Pasadena v. Stimson, 91 Cal. 238, 27 Pac. 604; In re Madera Irr. Dist., 92 Cal. 316, 28 Pac. 272, 675; Wheeler v. Philadelphia, 77 Pa. St. 348; Land Co. v. Soper, 39 Iowa, 112; In re New York El. R. Co., 70 N. Y. 350; In re Church, 92 N. Y. 1; Ferguson v. Ross, 126 N. Y. 459, 27 N. E. 954."

In the case of Railway Co. v. Ellis, 165 U. S. 150, 17 Sup. Ct. 255, there was involved the constitutionality of an act of the Texas legislature providing that persons having claims against a railroad company for personal services rendered, or labor done, or for damages, or for overcharges on freight, or claims for stock killed or injured by the train of any railway company, should present the same, and, if such claim was not paid within 30 days after presentation, might institute a suit, and recover an attorney's fee, not exceeding $10, in addition to the amount of the claim and the costs of the suit. In the course of the opinion the court said:

"If it be said that this penalty is cast only upon corporations, that to them special privileges are granted, and therefore upon them special burdens may be imposed, it is a sufficient answer to say that the penalty is not imposed upon all corporations. The burden does not go with the privilege. Only railroads, of all corporations, are selected to bear this penalty. The rule of equality is ignored." And again: "Unless the legislature may arbitrarily select one corporation, or one class of individuals, and visit a penalty upon them which is not imposed upon others guilty of like delinquency, this statute cannot be sustained." And further: "It is apparent that the mere fact of classification is not sufficient to relieve a statute from the reach of the equality clause of the fourteenth amendment, and that in all cases it must appear not only that a classification has been made, but also that it is one based upon some reasonable ground,—some difference which bears a just and proper relation to the attempted classification,—and is not a mere arbitrary selection. Tested by these principles, the statute in controversy cannot be sustained."

It will be observed that the Texas statute was solely directed against railroad corporations.

In the case of Railway Co. v. Paul, 173 U. S. 404, 19 Sup. Ct. 419, an action was brought in a justice's court of Arkansas by one Paul against the said railroad company, a corporation, to recover $21.80 due him as laborer, and a penalty of $1.25 per day for failure to pay him what was due when he was discharged, according to the provisions of an act of the legislature of Arkansas entitled "An act to provide for the protection of servants and employés of railroads" (Acts 1889, p. 76). The case went up to the circuit court of Saline county, which found that plaintiff was entitled to recover the sum named and the penalty. The supreme court of Arkansas affirmed the judgment (40 S. W. 705), whereupon a writ of error was brought. Chief Justice Fuller, in the course of the opinion rendered therein, said:

"The contention is that, as to railroad corporations organized prior to its passage, the act was void, because in violation of the fourteenth amendment. Corporations are the creations of the state, endowed with such faculties as the state bestows, and subject to such conditions as the state imposes; and, if the power to modify their charters is reserved, that reservation is a part of the contract, and no change within the legitimate exercise of the power can be said to impair its obligation; and, as this amendment rested on reasons deduced from the peculiar character of the business of the corporations affected and the public nature of their functions, and applied to all alike, the equal protection of the law was not denied. Railway Co. v. Mackey, 127 U. S. 205, 8 Sup. Ct. 1161." And again, on page 410, 173 U. S., and page 421, 19 Sup. Ct.: "In this case the act was passed 'for the protection of servants and employés of railroads,' and was upheld as an amendment of railroad charters, such exercise of the power reserved being justified on public considerations; and a duty was specially imposed, for the failure to discharge which the penalty was inflicted. The penalty was sustained because the requirement was valid."

The constitution of this state contains the usual provisions concerning corporations, and provides that:

"All laws now in force in this state concerning corporations, and all laws that may be hereafter passed pursuant to this section, may be altered from time to time or repealed." Article 12, § 1.

Under this provision the act of 1897 must be held as a legitimate exercise of the plenary power of the legislature to modify, by general laws, within reasonable limits, the rights and privileges which corporations of the state possess as such; and this legislation may be justi-

fied upon the ground that the purposes of the state in creating corporations will be the better accomplished by such amendment.

In the case of Railroad Co. v. Matthews, 174 U. S. 96, 19 Sup. Ct. 609, the constitutionality of an act of the legislature of Kansas providing that railway companies should be liable for a reasonable attorney's fee in addition to damages and costs in an action brought for damages by fire caused by the operation of the said railroad, was at issue. The court, citing the case of Railway Co. v. Ellis, supra, said:

"While the right to classify was conceded, it was said that such classification must be based upon some difference bearing a reasonable and just relation to the act in respect to which the classification is attempted; that no mere arbitrary selection can ever be justified by calling it classification. And there is no good reason why railroad corporations alone should be punished for not paying their debts. Compelling the payment of debts is not a police regulation. We see no reason to change the views then expressed, and, if the statute before us were the counterpart of that, we should be content to refer to that case as conclusive." Further on in the opinion the court said: "But neither the amendment [fourteenth amendment to the United States constitution], broad and comprehensive as it is, nor any other amendment, was designed to interfere with the power of the state, sometimes termed its 'police power,' to prescribe regulations to promote the health, peace, morals, education, and good order of the people, and to legislate so as to increase the industries of the state, develop its resources, and add to its wealth and prosperity. From the very necessities of society, legislation of a special character having these objects in view must often be had in certain districts,—such as for draining marshes and irrigating arid plains. Special burdens are often necessary for general benefits,—for supplying water, preventing fires, lighting districts, cleaning streets, opening parks, and many other objects. Regulations for these purposes may press with more or less weight upon one than upon another, but they are designed not to impose unequal or unnecessary restrictions upon any one, but to promote, with as little inconvenience as possible, the general good." And again (page 106, 174 U. S., and page 613, 19 Sup. Ct.): "It is the essence of a classification that upon the class are cast duties and burdens different from those resting upon the general public. Thus, when the legislature imposes on railroad corporations a double liability for stock killed by passing trains, it says, in effect, that if suit be brought against a railroad company for stock killed by one of its trains, it must enter into the courts under conditions different from those resting on ordinary suitors. If it is beaten in the suit, it must pay, not only the damage which it has done, but twice that amount. If it succeeds, it recovers nothing. On the other hand, if it should sue an individual for destruction of its live stock, it could under no circumstances recover any more than the value of that stock. So that it may be said that, in matter of liability in case of litigation, it is not placed on an equality with other corporations and individuals. Yet this court has unanimously said that this differentiation of liability, this inequality of right in the courts, is of no significance upon the question of constitutionality. Indeed, the very idea of classification is that of inequality. So that it goes without saying that the fact of inequality in no manner determines the question of constitutionality."

The doctrine of the foregoing cases leads to the conclusion that a classification of corporations imposing burdens different from those imposed upon the general public may be made without the statute encountering the prohibition of the state and federal constitutions, providing such classification is made upon reasonable grounds, and is not merely an arbitrary selection. The statute under consideration does not, in our opinion, contravene the principles of classification as laid down in the cases cited above.

Defendant's contention that the statute of 1897 unjustly discrim-

inates against corporations cannot be sustained in regard to the provisions of sections 1 and 2 of that statute. There is no discrimination involving the breach of any of the constitutional enactments invoked by the defendant. The provisions that corporations shall have a regular monthly pay day, and that the employés of a corporation shall, in the event of a violation of the provisions of section 1 by the corporation, be entitled to a lien on the property of the corporation, taking precedence of all other liens except recorded mortgages and deeds of trust, to a reasonable attorney's fee if he is obliged to bring an action at law to recover his wages, and to an attachment against the property of the corporation, and that an unrecorded deed shall not be a defense to such an action, are not such. as unjustly discriminate against the defendant.

Defendant further contends that the act is unconstitutional upon the ground that it deprives the employé and the corporation of the liberty and property of making contracts, without due process of law. In the course of its argument in this respect, defendant attacks various sections of the statute of 1897 other than sections 1 and 2 of that statute. Plaintiff, however, bases his action upon these two sections, and the remaining sections may therefore be left out of consideration in this case. As far as these two sections are concerned, there does not appear to be good ground for the contention of defendant. Section 1 provides for the monthly payment of wages which have been already earned, and which are due from the corporation to the employé, and section 2 provides penalties in case such provision is not complied with. It does not appear in what respects defendant is deprived of any liberty in making contracts by reason of these enactments. They simply constitute an effort to secure the regular payment to the employé of a corporation, by such corporation, of the wages to which he is entitled by virtue of his work performed, and an effort to make his legal remedy for the irregular payment of such wages as little troublesome and as little expensive as possible. The contention of defendant as to the unconstitutionality of the statute must be denied.

Defendant also urges that the action is premature as to the sum of $1,814.48, or "back pay," claimed therein. Defendant admits indebtedness to that extent, but argues that under the terms of an agreement made by the parties on or about the 8th of October, 1897, plaintiff and his assignors agreed to wait until the following February for one half of their wages due on August 23, 1897, the other half of which "back pay" they received upon the 8th of October, 1897, at the same time that they entered into the agreement to wait. This action was commenced on December 17, 1897, prior to the time for the expiration of the alleged agreement. A copy of the pay roll of the Garnett Gold-Mining Company was admitted in evidence. This pay roll contained nine parallel columns, namely, the first column, "Names"; the second, "Total Amt. Due Wages"; the third, "Board Deducted"; the fourth, "No. of Days"; the fifth, "Cash Paid"; the sixth, "Balance Due"; the seventh, "Paid on %"; the eighth, "Bal. Payable Six Months from Aug. 23, '97"; and the ninth and last, "Received payments. Bal. Payable 6 Mos. Accepted." The plain-

tiff and his assignors signed their names in the last column. It is contended by defendant that this constitutes an agreement on the part of plaintiff and his assignors to wait until February, 1898, for the balance of the amounts due them. Plaintiff denies that any such agreement was made, and his evidence was to the effect that when he signed the alleged agreement he thought that he was receipting an ordinary pay roll. The evidence of defendant's witnesses was altogether unsatisfactory upon the point whether plaintiff and his assignors were informed of the character of the alleged agreement, and that it differed from an ordinary pay roll. But, even conceding the fact of the agreement, plaintiff urges that such an agreement, if made, is merely a nudum pactum, and can have no legal value for want of consideration. Defendant maintains that there was good consideration for the agreement, and alleges that suits have been brought for "back pay" by some of plaintiff's assignors, and that the company had informed the men that, unless the six-months extension was given, and all the suits dismissed, the company could do nothing more, and litigation would have to take its course. Defendant claims that the benefit derived by the men from this settlement was sufficient consideration to support the agreement. Section 1605 of the Civil Code of California defines "consideration" as follows:

"Any benefit conferred, or agreed to be conferred, upon the promisor by any other person, to which the promisor is not lawfully entitled, or any prejudice suffered or agreed to be suffered by such (other) person, other than such as he is at the time of consent lawfully bound to suffer, as an inducement to the promise, is a good consideration for a promise."

It cannot be maintained that plaintiff and his assignors had any benefit conferred upon them by such an agreement as is here set forth by defendant. Half of their wages was overdue, and it was the duty of defendant to pay such wages upon demand. The promise to perform that duty after an interval of six months cannot be called good consideration for the agreement. The supreme court of this state, in the case of Sullivan v. Sullivan, 99 Cal. 187, 193, 33 Pac. 862, 864, declares:

"It is well settled that neither a promise to perform a duty nor the performance of a duty constitutes the consideration of a contract."

The plaintiff is entitled to a reasonable attorney's fee, to be fixed by the court (section 2, Act March 29, 1897; St. Cal. 1897, p. 231), which shall form part of the judgment in said action. The plaintiff asks that the fee be fixed at $500. The defendant alleges that, if the plaintiff is entitled to any attorney's fee for the prosecution of this action, $200 would be a reasonable sum. I am of the opinion that the attorney's fee should be fixed at $300, and such will be the order. A judgment will therefore be entered for the plaintiff for the amount claimed, and attorney's fee of $300, and costs.