### ALASKA PACKERS' ASS'N v. DOMENICO et al.

(Circuit Court of Appeals, Ninth Circuit. May 26, 1902.)

#### No. 789.

1. ADMIRALTY—REVIEW ON APPEAL—FINDING OF FACTS.

A finding of fact made by the court in an admiralty case upon the conflicting testimony of witnesses examined in open court will not be disturbed on appeal.

2. CONTRACT—CONSIDERATION—PERFORMANCE OF LEGAL OBLIGATION.

Libelants contracted with respondent, which owned a salmon canning plant in Alaska, to perform services as sailors in navigating a vessel from San Francisco to such plant and return, and in catching and canning salmon, while there, during the season, for which they were to receive a stipulated compensation. After reaching the plant they refused, without cause, to further perform the contract unless respondent's superintendent signed an agreement to pay additional compensation. He stated that he had no authority to do so, but being unable to procure other men, owing to the remoteness of the place and the shortness

¶ 1. See Admiralty, vol. 1, Cent. Dig. § 770.

of the season, he complied with their demand, and a second contract was signed, identical with the first except as to the compensation to be paid. *Held*, that the agreement to pay additional compensation for services which libelants were legally bound to render under the old contract was void for want of consideration, conceding the superintendent's authority to make it, there being no just ground to claim, under the circumstances shown, that respondent voluntarily waived the breach of the original contract by libelants.

Appeal from the District Court of the United States for the Northern District of California.

Chickering & Gregory, for appellant.

Marshall B. Woodworth and Edward J. Banning, for appellees.

Before GILBERT and ROSS, Circuit Judges, and HAWLEY, District Judge.

ROSS, Circuit Judge. The libel in this case was based upon a contract alleged to have been entered into between the libelants and the appellant corporation on the 22d day of May, 1900, at Pyramid Harbor, Alaska, by which it is claimed the appellant promised to pay each of the libelants, among other things, the sum of $100 for services rendered and to be rendered. In its answer the respondent denied the execution, on its part, of the contract sued upon, averred that it was without consideration, and for a third defense alleged that the work performed by the libelants for it was performed under other and different contracts than that sued on, and that, prior to the filing of the libel, each of the libelants was paid by the respondent the full amount due him thereunder, in consideration of which each of them executed a full release of all his claims and demands against the respondent.

The evidence shows without conflict that on March 26, 1900, at the city and county of San Francisco, the libelants entered into a written contract with the appellant, whereby they agreed to go from San Francisco to Pyramid Harbor, Alaska, and return, on board such vessel as might be designated by the appellant, and to work for the appellant during the fishing season of 1900, at Pyramid Harbor, as sailors and fishermen, agreeing to do "regular ship's duty, both up and down, discharging and loading; and to do any other work whatsoever when requested to do so by the captain or agent of the Alaska Packers' Association." By the terms of this agreement, the appellant was to pay each of the libelants $50 for the season, and two cents for each red salmon in the catching of which he took part.

On the 15th day of April, 1900, 21 of the libelants signed shipping articles by which they shipped as seamen on the Two Brothers, a vessel chartered by the appellant for the voyage between San Francisco and Pyramid Harbor, and also bound themselves to perform the same work for the appellant provided for by the previous contract of March 26th; the appellant agreeing to pay them therefor the sum of $60 for the season, and two cents each for each red salmon in the catching of which they should respectively take part. Under these contracts, the libelants sailed on board the Two Brothers for Pyramid Harbor, where the appellant had about $150,000 invested in a salmon cannery. The libelants arrived there early in April of the year mentioned, and began

to unload the vessel and fit up the cannery. A few days thereafter, to wit, May 19th, they stopped work in a body, and demanded of the company's superintendent there in charge $100 for services in operating the vessel to and from Pyramid Harbor, instead of the sums stipulated for in and by the contracts; stating that unless they were paid this additional wage they would stop work entirely, and return to San Francisco. The evidence showed, and the court below found, that it was impossible for the appellant to get other men to take the places of the libelants, the place being remote, the season short and just opening; so that, after endeavoring for several days without success to induce the libelants to proceed with their work in accordance with their contracts, the company's superintendent, on the 22d day of May, so far yielded to their demands as to instruct his clerk to copy the contracts executed in San Francisco, including the words "Alaska Packers' Association" at the end, substituting, for the $50 and $60 payments, respectively, of those contracts, the sum of $100, which document, so prepared, was signed by the libelants before a shipping commissioner whom they had requested to be brought from Northeast Point; the superintendent, however, testifying that he at the time told the libelants that he was without authority to enter into any such contract, or to in any way alter the contracts made between them and the company in San Francisco. Upon the return of the libelants to San Francisco at the close of the fishing season, they demanded pay in accordance with the terms of the alleged contract of May 22d, when the company denied its validity, and refused to pay other than as provided for by the contracts of March 26th and April 5th, respectively. Some of the libelants, at least, consulted counsel, and, after receiving his advice, those of them who had signed the shipping articles before the shipping commissioner at San Francisco went before that officer, and received the amount due them thereunder, executing in consideration thereof a release in full, and the others being paid at the office of the company, also receipting in full for their demands.

On the trial in the court below, the libelants undertook to show that the fishing nets provided by the respondent were defective, and that it was on that account that they demanded increased wages. On that point, the evidence was substantially conflicting, and the finding of the court was against the libelants, the court saying:

"The contention of libelants that the nets provided were rotten and unserviceable is not sustained by the evidence. The defendant's interest required that libelants should be provided with every facility necessary to their success as fishermen, for on such success depended the profits defendant would be able to realize that season from its packing plant, and the large capital invested therein. In view of this self-evident fact, it is highly improbable that the defendant gave libelants rotten and unserviceable nets with which to fish. It follows from this finding that libelants were not justified in refusing performance of their original contract." 112 Fed. 554.

The evidence being sharply conflicting in respect to these facts, the conclusions of the court, who heard and saw the witnesses, will not be disturbed. The Alijandro, 6 C. C. A. 54, 56 Fed. 621; The Lucy, 20 C. C. A. 660, 74 Fed. 572; The Glendale, 26 C. C. A. 500, 81 Fed. 633; The Coquitlam, 23 C. C. A. 438, 77 Fed. 744; Gorham Mfg. Co. v. Emery-Bird-Thayer Dry Goods Co., 43 C. C. A. 511, 104 Fed. 243.

The real questions in the case as brought here are questions of law, and, in the view that we take of the case, it will be necessary to consider but one of those. Assuming that the appellant's superintendent at Pyramid Harbor was authorized to make the alleged contract of May 22d, and that he executed it on behalf of the appellant, was it supported by a sufficient consideration? From the foregoing statement of the case, it will have been seen that the libelants agreed in writing, for certain stated compensation, to render their services to the appellant in remote waters where the season for conducting fishing operations is extremely short, and in which enterprise the appellant had a large amount of money invested; and, after having entered upon the discharge of their contract, and at a time when it was impossible for the appellant to secure other men in their places, the libelants, without any valid cause, absolutely refused to continue the services they were under contract to perform unless the appellant would consent to pay them more money. Consent to such a demand, under such circumstances, if given, was, in our opinion, without consideration, for the reason that it was based solely upon the libelants' agreement to render the exact services, and none other, that they were already under contract to render. The case shows that they willfully and arbitrarily broke that obligation. As a matter of course, they were liable to the appellant in damages, and it is quite probable, as suggested by the court below in its opinion, that they may have been unable to respond in damages. But we are unable to agree with the conclusions there drawn, from these facts, in these words:

"Under such circumstances, it would be strange, indeed, if the law would not permit the defendant to waive the damages caused by the libelants' breach, and enter into the contract sued upon,—a contract mutually beneficial to all the parties thereto, in that it gave to the libelants reasonable compensation for their labor, and enabled the defendant to employ to advantage the large capital it had invested in its canning and fishing plant."

Certainly, it cannot be justly held, upon the record in this case, that there was any voluntary waiver on the part of the appellant of the breach of the original contract. The company itself knew nothing of such breach until the expedition returned to San Francisco, and the testimony is uncontradicted that its superintendent at Pyramid Harbor, who, it is claimed, made on its behalf the contract sued on, distinctly informed the libelants that he had no power to alter the original or to make a new contract; and it would, of course, follow that, if he had no power to change the original, he would have no authority to waive any rights thereunder. The circumstances of the present case bring it, we think, directly within the sound and just observations of the supreme court of Minnesota in the case of King v. Railway Co., 61 Minn. 482, 63 N. W. 1105:

"No astute reasoning can change the plain fact that the party who refuses to perform, and thereby coerces a promise from the other party to the contract to pay him an increased compensation for doing that which he is legally bound to do, takes an unjustifiable advantage of the necessities of the other party. Surely it would be a travesty on justice to hold that the party so making the promise for extra pay was estopped from asserting that the promise was without consideration. A party cannot lay the founda-

tion of an estoppel by his own wrong, where the promise is simply a repetition of a subsisting legal promise. There can be no consideration for the promise of the other party, and there is no warrant for inferring that the parties have voluntarily rescinded or modified their contract. The promise cannot be legally enforced, although the other party has completed his contract in reliance upon it."

In Lingenfelder v. Brewing Co., 103 Mo. 578, 15 S. W. 844, the court, in holding void a contract by which the owner of a building agreed to pay its architect an additional sum because of his refusal to otherwise proceed with the contract, said:

"It is urged upon us by respondents that this was a new contract. New in what? Jungenfeld was bound by his contract to design and supervise this building. Under the new promise, he was not to do anything more or anything different. What benefit was to accrue to Wainwright? He was to receive the same service from Jungenfeld under the new, that Jungenfeld was bound to tender under the original, contract. What loss, trouble, or inconvenience could result to Jungenfeld that he had not already assumed? No amount of metaphysical reasoning can change the plain fact that Jungenfeld took advantage of Wainwright's necessities, and extorted the promise of five per cent. on the refrigerator plant as the condition of his complying with his contract already entered into. Nor had he even the flimsy pretext that Wainwright had violated any of the conditions of the contract on his part. Jungenfeld himself put it upon the simple proposition that 'if he, as an architect, put up the brewery, and another company put up the refrigerating machinery, it would be a detriment to the Empire Refrigerating Company,' of which Jungenfeld was president. To permit plaintiff to recover under such circumstances would be to offer a premium upon bad faith, and invite men to violate their most sacred contracts that they may profit by their own wrong. That a promise to pay a man for doing that which he is already under contract to do is without consideration is conceded by respondents. The rule has been so long imbedded in the common law and decisions of the highest courts of the various states that nothing but the most cogent reasons ought to shake it. [Citing a long list of authorities.] But it is 'carrying coals to Newcastle' to add authorities on a proposition so universally accepted, and so inherently just and right in itself. The learned counsel for respondents do not controvert the general proposition. Their contention is, and the circuit court agreed with them, that, when Jungenfeld declined to go further on his contract, the defendant then had the right to sue for damages, and not having elected to sue Jungenfeld, but having acceded to his demand for the additional compensation, defendant cannot now be heard to say his promise is without consideration. While it is true Jungenfeld became liable in damages for the obvious breach of his contract, we do not think it follows that defendant is estopped from showing its promise was made without consideration. It is true that as eminent a jurist as Judge Cooley, in Goebel v. Linn, 47 Mich. 489, 11 N. W. 284, 41 Am. Rep. 723, held that an ice company which had agreed to furnish a brewery with all the ice they might need for their business from November 8, 1879, until January 1, 1881, at $1.75 per ton, and afterwards in May, 1880, declined to deliver any more ice unless the brewery would give it $3 per ton, could recover on a promissory note given for the increased price. Profound as is our respect for the distinguished judge who delivered the opinion, we are still of the opinion that his decision is not in accord with the almost universally accepted doctrine, and is not convincing; and certainly so much of the opinion as holds that the payment, by a debtor, of a part of his debt then due, would constitute a defense to a suit for the remainder, is not the law of this state, nor, do we think, of any other where the common law prevails. * * * What we hold is that, when a party merely does what he has already obligated himself to do, he cannot demand an additional compensation therefor; and although, by taking advantage of the necessities of his adversary, he obtains a promise for more, the law will regard it as nudum pactum, and will not lend its process to aid in the wrong."

The case of Goebel v. Linn, 47 Mich. 489, 11 N. W. 284, 41 Am. Rep. 723, is one of the eight cases relied upon by the court below in support of its judgment in the present case, five of which are by the supreme court of Massachusetts, one by the supreme court of Vermont, and one other Michigan case,—that of Moore v. Locomotive Works, 14 Mich. 266. The Vermont case referred to is that of Lawrence v. Davey, 28 Vt. 264, which was one of the three cases cited by the court in Moore v. Locomotive Works, 14 Mich. 272, 273, as authority for its decision. In that case there was a contract to deliver coal at specified terms and rates. A portion of it was delivered, and plaintiff then informed the defendant that he could not deliver at those rates, and, if the latter intended to take advantage of it, he should not deliver any more; and that he should deliver no more unless the defendant would pay for the coal independent of the contract. The defendant agreed to do so, and the coal was delivered. On suit being brought for the price, the court said:

"Although the promise to waive the contract was after some portion of the coal sought to be recovered had been delivered, and so delivered that probably the plaintiff, if the defendant had insisted upon strict performance of the contract, could not have recovered anything for it, yet, nevertheless, the agreement to waive the contract, and the promise, and, above all, the delivery of coal after this agreement to waive the contract, and upon the faith of it, will be a sufficient consideration to bind the defendant to pay for the coal already received."

The doctrine of that case was impliedly overruled by the supreme court of Vermont in the subsequent case of Cobb v. Cowdery, 40 Vt. 25, 94 Am. Dec. 370, where it was held that:

"A promise by a party to do what he is bound in law to do is not an illegal consideration, but is the same as no consideration at all, and is merely void; in other words, it is insufficient, but not illegal. Thus, if the master of a ship promise his crew an addition to their fixed wages in consideration of, and as an incitement to, their extraordinary exertions during a storm, or in any other emergency of the voyage, this promise is nudum pactum; the voluntary performance of an act which it was before legally incumbent on the party to perform being in law an insufficient consideration; and so it would be in any other case where the only consideration for the promise of one party was the promise of the other party to do, or his actual doing, something which he was previously bound in law to do. Chit. Cont. [10th Am. Ed.] 51; Smith, Cont. 87; 3 Kent, Comm. 185."

The Massachusetts cases cited by the court below in support of its judgment commence with the case of Munroe v. Perkins, 9 Pick. 305, 20 Am. Dec. 475, which really seems to be the foundation of all of the cases in support of that view. In that case, the plaintiff had agreed in writing to erect a building for the defendants. Finding his contract a losing one, he had concluded to abandon it, and resumed work on the oral contract of the defendants that, if he would do so, they would pay him what the work was worth without regard to the terms of the original contract. The court said that whether the oral contract was without consideration

—"Depends entirely on the question whether the first contract was waived. The plaintiff having refused to perform that contract, as he might do, subjecting himself to such damages as the other parties might show they were entitled to recover, he afterward went on, upon the faith of the new promise, and finished the work. This was a sufficient consideration. If Payne and

Perkins were willing to accept his relinquishment of the old contract, and proceed on a new agreement, the law, we think, would not prevent it."

The case of Goebel v. Linn, 47 Mich. 489, 11 N. W. 284, 41 Am. Rep. 723, presented some unusual and extraordinary circumstances. But, taking it as establishing the precise rule adopted in the Massachusetts cases, we think it not only contrary to the weight of authority, but wrong on principle.

In addition to the Minnesota and Missouri cases above cited, the following are some of the numerous authorities holding the contrary doctrine: Vanderbilt v. Schreyer, 91 N. Y. 392; Ayres v. Railroad Co., 52 Iowa, 478, 3 N. W. 522; Harris v. Carter, 3 Ellis & B. 559; Frazer v. Hatton, 2 C. B. (N. S.) 512; Conover v. Stillwell, 34 N. J. Law, 54; Reynolds v. Nugent, 25 Ind. 328; Spencer v. McLean (Ind. App.) 50 N. E. 769, 67 Am. St. Rep. 271; Harris v. Harris (Colo. App.) 47 Pac. 841; Moran v. Peace, 72 Ill. App. 139; Carpenter v. Taylor (N. Y.) 58 N. E. 53; Westcott v. Mitchell (Me.) 50 Atl. 21; Robinson v. Jewett, 116 N. Y. 40, 22 N. E. 224; Sullivan v. Sullivan, 99 Cal. 187, 33 Pac. 862; Blyth v. Robinson, 104 Cal. 239, 37 Pac. 904; Skinner v. Mining Co. (C. C.) 96 Fed. 735; 1 Beach, Cont. § 166; Langd. Cont. § 54; 1 Pars. Cont. (5th Ed.) 457; Ferguson v. Harris (S. C.) 17 S. E. 782, 39 Am. St. Rep. 745.

It results from the views above expressed that the judgment must be reversed, and the cause remanded, with directions to the court below to enter judgment for the respondent, with costs. It is so ordered.