[No. 15054.  Department Two. — August 10, 1893.]

FRANK J. SULLIVAN, EXECUTOR, ETC., RESPONDENT,
v. MARGARET SULLIVAN, APPELLANT.

INSURANCE — LIABILITY OF BENEFICIARY FOR DEBT OF INSURED — ADVANCES UPON POLICY — STATUTE OF LIMITATIONS. — The wife named as beneficiary in a policy of insurance upon the life of her husband is under no obligation to pay a debt of her husband to his brother for advances made on account of the policy, for which she had never before been liable as principal or surety, even though such debt had not been barred by the statute of limitations, and surely not after the debt had been so barred.

ID. — PROMISE OF BENEFICIARY — WANT OF CONSIDERATION — MONEY HAD AND RECEIVED. — A promise by the wife as beneficiary of such policy to pay out of the proceeds of the policy the debt of her insured husband to his brother, after such debt had become barred by the statute of limitations, made to the executor of the deceased brother in consideration of a promise by such executor to deliver to her the policy, which it was his duty to do upon demand, without compensation, is without legal consideration to support it, and can lay no foundation for an obligation on her part to pay the debt, and she is not liable to an action for money had and received to the amount of the debt, after having collected the full amount of the policy.

ID. — CONTRACT — PERFORMANCE OF DUTY NO CONSIDERATION. — Neither a promise to perform a duty, nor the performance of a duty, constitutes a consideration of a contract.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco County.

The facts are stated in the opinion.

*William H. Jordan*, for Appellant.

If the agreement was a promise on the part of the defendant to answer for the debt or default of another, it must fall, as there was not, at the time of its execution, a subsisting debt for which the liability could be incurred. (*King* v. *Summitt*, 73 Ind. 312; 38 Am. Rep. 145; Browne on Statute of Frauds, sec. 156.) Even if the payment of premiums by John Sullivan constituted a lien upon the policy, still the debt having become barred by limitation, the lien was extinguished. (Civ. Code, sec. 2911.) Neither could it be held as a pledge for the premiums paid, as the statute of limitations extinguished any pledge. (4 Lawson's Rights, Remedies, and Practice, p. 3043.) The agreement for payment, having been given as an inducement to the executor to find the policy and deliver it, was void for lack of consideration, as it was the duty of the executor to find and deliver it up. (5 Lawson's Rights, Remedies, and

Practice, sec. 2250. See also *McDonald* v. *Neilson*, 2 Cowen, 139; 14 Am. Dec. 431; *Ellison* v. *Jackson W. Co.*, 12 Cal. 542.)

*Frank J. Sullivan*, in *pro per.*, and *E. P. Cole*, for Respondent.

There was a valid consideration for the agreement. It is well settled that a debt barred by the statute of limitations, or by operation of law not affecting the right, is a sufficient consideration for a new promise to pay it. (*Mills* v. *Wyman*, 3 Pick. 208; 5 Lawson's Rights, Remedies, and Practice, sec. 2249; *Feeny* v. *Daly*, 8 Cal. 84; *Chabot* v. *Tucker*, 39 Cal. 437; *Mull* v. *Van Trees*, 50 Cal. 547; 1 Wait's Actions and Defenses, sec. 17, p. 109; 8 Wait's Actions and Defenses, sec. 19, pp. 109, 513; *Rosenberg* v. *Ford*, 85 Cal. 610.) A moral obligation alone is sufficient. (Civ. Code, secs. 1605, 1606.) The effort of the executor to find the policy was one which he was not legally bound to make. (*Trundle* v. *Riley*, 17 Mon. B. 396.) The executor had a lien on the policy for the balance due, and he had a right as such executor to retain it as a pledge until the same was paid. (Civ. Code, secs. 2896, 2987.) Even if the remedy for foreclosure of the lien is barred by the statute of limitations, still, as no payment or tender of payment was made, the statute did not extinguish the debt. (Civ. Code, sec. 2913; Jones on Pledges, sec. 528, p. 443; sec. 570, p. 436; *Roberts* v. *Sykes*, 30 Barb. 173; Rev. Civ. Code, 1870, art. 3175; *Jones* v. *Merchants' Bank*, 4 Rob. [N. Y.] 221; 6 Rob. [N. Y.] 162; *In re Oakley*, 2 Edw. Ch. 478; Schouler on Bailments, secs. 250, 263; *Hulbert* v. *Clark*, 128 N. Y. 301; *Lewis* v. *Hawkins*, 23 Wall. 119; *Hardin* v. *Boyd*, 113 U. S. 756; *Coldcleugh* v. *Johnson*, 34 Ark. 314; *Thayer* v. *Mann*, 19 Pick. 535; *Hancock* v. *Franklin Ins. Co.*, 114 Mass. 155; *Shaw* v. *Silloway*, 145 Mass. 503; *Joy* v. *Adams*, 26 Me. 330; *Belknap* v. *Gleason*, 11 Conn. 160; 27 Am. Dec. 721; *Ballou* v. *Taylor*, 14 R. I. 277; *Spears* v. *Hartly*, 3 Esp. 81; *Higgins* v. *Scott*, 2 Barn. & Adol. 413; *Brandt* v. *Thompson*, 91 Cal. 458; *Spect* v. *Spect*, 88 Cal. 441; 22 Am. St. Rep. 314; *Kortright* v. *Cady*, 21 N. Y. 364; 78 Am. Dec. 155; *Henry* v. *Confidence M. Co.*, 1 Nev. 622; *Dutton* v. *Warschauer*, 21 Cal. 625; 82 Am. Dec. 765.)

VANCLIEF, C. — Action to recover eight hundred and fifty-four dollars, the complaint being in two counts; the first on a

special written agreement, and the second for money had and received for the use of plaintiff.

The plaintiff is the executor of the will of his father, John Sullivan, who died in July, 1882; and the defendant is the widow of Michael Sullivan, deceased, who was a brother of John Sullivan.

It is alleged in the complaint that "on the tenth day of January, 1890, the defendant being indebted to the estate of John Sullivan in the sum of eight hundred and fifty-four dollars for money before that time advanced by John Sullivan in his lifetime to pay certain premiums on a policy of insurance on the life of Michael Sullivan, issued by the New York Life Insurance Company for the sum of seven thousand five hundred dollars, and payable to defendant, which said policy was in the possession of said John Sullivan, and was among his papers, and it requiring a great deal of time and labor to discover and find the same, and the said insurance company having refused to pay said policy unless the same was found and surrendered to it," the plaintiff and defendant entered into the following agreement:—

"This agreement witnesseth: Whereas, certain moneys amounting to over eight hundred and fifty-four dollars, United States gold coin, were paid by John Sullivan in his lifetime for and on account of a policy held by the New York Life Insurance Company, No. 138638; and whereas, said company will not pay the amount of money due by the death of Michael Sullivan, brother of said John Sullivan, until said policy is surrendered; and whereas, Frank J. Sullivan, executor of the estate of John Sullivan, deceased, is willing to look up said policy and surrender the same, provided Margaret Sullivan, the beneficiary in said policy named, will give said Frank J. Sullivan, executor, an order on said New York Life Insurance Company (A. G. Hawes, agent) for said sum of eight hundred and fifty-four dollars, conditioned on the finding and surrender of said policy to said insurance company, and guarantees the same;—

"Now, therefore, we, the undersigned, hereby agree to the above terms, and A. G. Hawes, agent of the New York Life Insurance Company, hereby agrees to reserve said sum of eight hundred and fifty-four dollars from the amount due Margaret

Sullivan, beneficiary, said amount to be subject to the order of said Frank J. Sullivan, executor of the estate of John Sullivan, deceased.

"Witness our hands and seals, this tenth day of January, A. D. 1890.

[Seal]       "FRANK J. SULLIVAN,
   "Executor of the Estate of John Sullivan, Deceased.

              her
[Seal]      "MARGARET SULLIVAN X
              mark

"Witness: P. J. G. KENNA.

"Witness to mark of Margaret Sullivan: P. J. SULLIVAN."

It is then alleged that thereafter the plaintiff looked for, and after great difficulty found and delivered the policy according to the agreement, and thereupon demanded of defendant an order on said insurance company for the said sum of eight hundred and fifty-four dollars, which she refused to give; but that she demanded and received from the insurance company the full sum of seven thousand five hundred dollars due on said policy; and that she has ever since refused to pay plaintiff said sum of eight hundred and fifty-four dollars, or any part thereof.

The answer of the defendant admits that the policy was in the custody of John Sullivan for safe-keeping immediately before his death, and that upon his death it passed into the possession of the plaintiff, as his executor; but avers that upon the death of her husband, Michael Sullivan, she was entitled to the possession thereof, and that it was the duty of the plaintiff to deliver it to her on her demand without any compensation whatever; but that upon such demand the plaintiff had refused to deliver it to her, or even to look for it among the papers of his father's estate, except on the condition that she would sign the agreement above set out.

She admits that she executed the agreement for the purpose of getting possession of the policy; but avers that there was no consideration whatever for the agreement on her part; and denies that on the tenth day of January, 1890, or at any other time, she was indebted to the estate of John Sullivan in any sum for money advanced by John Sullivan to pay premiums on said policy.

The court found for the plaintiff upon all the issues of fact, and rendered judgment in his favor for the sum demanded.

The defendant appeals from the judgment and from an order denying her motion for a new trial.

The court found generally that the complaint was true and the answer false; and specially found as follows: "That defendant, at the time she signed said contract, knew of and admitted that John Sullivan had paid in his lifetime a large sum of money to keep alive the said policy of insurance for the benefit of defendant, and that eight hundred and fifty-four dollars had not been repaid to the said John Sullivan, or to plaintiff; and that plaintiff and defendant, before said contract was executed, agreed and settled that the sum of eight hundred and fifty-four dollars was the amount unpaid, and said defendant voluntarily offered and promised to pay the same as just and correct, to obtain possession of said policy which was then in the possession of plaintiff, and which had been left with said John Sullivan in his lifetime by defendant and her deceased husband, Michael Sullivan, and thereupon said defendant executed the agreement set out in the complaint, and thereupon plaintiff, after much labor and trouble in searching for said policy, delivered the same to defendant"; and, as a mixture of facts and conclusions of law, further found: "That plaintiff, as the executor of John Sullivan, deceased, had a lien on said policy to secure the sum of eight hundred and fifty-four dollars, premiums advanced and paid by said John Sullivan for the benefit of defendant, and to keep said policy alive; and defendant was not entitled to the possession of said policy until said sum of eight hundred and fifty-four dollars was paid."

As contended by appellant, there is no evidence that John Sullivan, during his lifetime, advanced or paid any money as premiums on the policy, or on account of the policy, for or at the request of the defendant, or even with her knowledge or consent; and, consequently, no evidence that she was ever indebted to the estate of John Sullivan in any sum for the alleged advancements or payments on account of said policy. No such fact is recited in the agreement; and there is no other evidence touching the question, except the testimony of the plaintiff, as follows:—

Q. "What was the indebtedness that you found Margaret Sullivan to owe?" A. "I cannot recall now the facts at all; as I take it, Margaret Sullivan was not the party at all. It was Michael Sullivan whose receipts were shown by her son; and I didn't know . . . . that Michael Sullivan had paid John Sullivan anything until this young gentleman showed me the receipts which I recognized to be in my father's handwriting, and we struck a balance; that is, there was a certain amount of indebtedness that I claimed to be due from Michael Sullivan, and I showed him the receipt for money paid by John Sullivan, and then he showed me receipts for money which had been paid by Michael Sullivan to John Sullivan, and the difference between the receipts is what was stated in this memorandum of agreement. . . . . This statement of account was a matter of indebtedness between Michael Sullivan and John Sullivan prior to the death of John Sullivan. The estate of John Sullivan had paid nothing to Mrs. Margaret Sullivan as far as I know. John Sullivan in his lifetime never paid anything for Mrs. Margaret Sullivan."

This seems conclusive that the debt, if any debt there was which the defendant agreed to pay, was a debt of her husband, Michael Sullivan, and not her debt. Nor is there anything in the complaint, findings of fact, or the evidence, to warrant the legal conclusion that the estate of John Sullivan ever had a lien of any kind on the policy of insurance. The plaintiff testified: "I don't know anything about the circumstances under which John came into possession of that policy. . . . . It had never been assigned to John Sullivan."

No copy of the policy is contained in the record; but it was admitted by both parties that it "contained the name of Margaret Sullivan as beneficiary." Nor does it appear when Michael Sullivan died; but it may fairly be inferred that he died in the latter part of the year 1889.

If Michael Sullivan was indebted to John Sullivan for money advanced or paid in the lifetime of the latter, the debt was barred by the statute of limitations long before the execution of the agreement upon which this action is founded; and conceding that this agreement contains a promise of the defendant

to pay that debt, the remaining question is, Was there any consideration for the promise?

The plaintiff testified that "the consideration of this agreement is expressed in the agreement; the agreement expresses the consideration, and there were no other considerations than those expressed in the agreement"; yet, in his brief, he contends that there was "a moral obligation founded upon an antecedent valuable consideration," which constituted a good consideration for the agreement, though no such moral obligation founded upon an antecedent valuable consideration is expressed in the agreement. Nor did the court find, or the evidence tend to prove, any antecedent valuable or good consideration for the agreement. The defendant was under no kind of obligation to pay a debt of her deceased husband for which she had never before been liable, either as principal or surety, even though such debt had not been barred by the statute of limitations (Wharton on Contracts, secs. 494, 512–514; *Cook* v. *Bradley,* 7 Conn. 57; 18 Am. Dec. 79); surely not after the debt had been barred (*Rosenberg* v. *Ford,* 85 Cal. 610); and this is all that need be decided in this case.

The only consideration expressed in the agreement, other than the alleged moral obligation, is plaintiff's promise to look for, find and surrender the policy. This it was his duty to do, on demand of defendant, without compensation. After the maturity of the policy by the death of her husband, if not before, the defendant was entitled to the possession of it, unless the plaintiff, in his character of executor, had a lien on it. Whether the finding of the policy among the papers of the estate required more or less labor must have depended upon the degree of care or negligence with which the plaintiff had kept it, for which the defendant was not responsible; but it does not appear why a search of more than ten minutes was necessary to find it. It is well settled that neither a promise to perform a duty, nor the performance of a duty, constitutes a consideration of a contract.

I think the judgment and order should be reversed, and the cause remanded for a new trial.

TEMPLE, C., and BELCHER, C., concurred.

For the reasons given in this foregoing opinion, the judgment and order are reversed, and the cause remanded for a new trial.

McFARLAND, J., DE HAVEN, J., FITZGERALD, J.

Hearing in Bank denied.