[L. A. No. 3836. Department One.—December 16, 1916.]

D. F. ROYER, Appellant, v. D. N. KELLY, as Executor of the Last Will of Caroline M. Conn, Deceased, Respondent.

WRITTEN CONTRACT—RECITAL OF CONSIDERATION—ESTOPPEL.—The parties to a written agreement are not estopped by recitals therein with respect to its consideration. The true consideration, or the want of consideration, may always be shown by extrinsic evidence for the purpose of impeaching the contract, notwithstanding that it states facts which show a valuable consideration.

ID.—PROMISE OF WIFE TO PAY FOR SERVICES RENDERED HUSBAND.—A wife is under no legal or moral obligation to pay for services rendered for her deceased husband in his lifetime, and her agreement to do so, made after his death, is purely voluntary and without binding force.

ID.—FUTURE SERVICES AS CONSIDERATION—FAILURE TO PERFORM SERVICES.—A promise to pay a sum of money, made in sole consideration of future services of the promisee to be rendered in connection with the establishment and operation of a manufacturing plant, imposes no obligation on the promisor, where such services were never performed owing to the abandonment of the enterprise.

APPEAL from a judgment of the Superior Court of Orange County. Frank R. Willis, Judge presiding.

The facts are stated in the opinion of the court.

Williams & Rutan, and William M. Brown, for Appellant.

Scarborough & Forgy, for Respondent.

SHAW, J.—The plaintiff sued to recover the sum of twenty-two thousand four hundred dollars, claimed to have been owing to him from the decedent, Caroline M. Conn, at the time of her death, upon two agreements in writing between them, one executed on September 10, 1907, the other on October 6, 1911.

The answer alleged as a defense, among other things, that each of said agreements was executed without any consideration and was obtained by undue influence. The court found that there was no consideration for either of the contracts

and gave judgment for the defendant. The plaintiff appeals. He claims that said finding is contrary to the evidence.

By the writing of 1907, Mrs. Conn agreed to furnish and establish a machine plant for light manufacturing, at a cost not to exceed twenty-five thousand dollars, to be located near Los Angeles, and to authorize Royer, as her agent, to buy the machinery therefor, ship the same to Los Angeles, secure a suitable location and set it up ready for operation, and she thereby appointed him as general manager of the plant. She was to have all the net profits of the operation of the factory until the "entire purchase price," with six per cent interest, was returned to her, whereupon the title to the plant should vest in Royer. He agreed to manage the plant and pay her the net profits, to be applied as first stated. It further provided that if she died before the net profits had fully paid for the plant, Royer should have the option either to take the plant as his own without further payment, or, in lieu thereof, to accept from the estate of Mrs. Conn, the sum of twenty-five thousand dollars. It further declared that the agreement was made to carry out the wishes of the deceased husband of Mrs. Conn, said wishes being that on the death of both Mrs. Conn and her husband, Royer "should, at his option, have said plant, or the sum of twenty-five thousand dollars, for services performed by said second party (Royer) for said first party (Mrs. Conn) and her husband."

The agreement of 1911 recited that whereas Mrs. Conn and Royer have had "numerous dealings with each other which have never been properly adjusted, now this agreement is made for the purpose of settling all differences now existing between the said parties." It then declared that the agreement of 1907 "is now in full force and effect," except as in the later agreement specified. It then provided that whereas Royer has not received the machine plant, as provided in the agreement of 1907, now, therefore, he is entitled to twenty-five thousand dollars out of the estate of Mrs. Conn, to be paid as a debt against her, and that all sums then owing by Royer to her on promissory notes shall be deducted from said twenty-five thousand dollars. At her death he was owing her two thousand six hundred dollars on a promissory note, which sum he deducted in the statement of his claim filed against her estate, leaving the balance of twenty-two thousand four hundred dollars.

The recitals of the two agreements furnish presumptive evidence of a valuable consideration. But the rule is that the parties are not estopped by recitals in an agreement with respect to its consideration. The true consideration, or the want of consideration, may always be shown by extrinsic evidence for the purpose of impeaching a contract, notwithstanding that it states facts which show a valuable consideration. (*Chaffee* v. *Browne*, 109 Cal. 220, [41 Pac. 1028]; *National Hardwood Co.* v. *Sherwood*, 165 Cal. 7, [130 Pac. 881]; *Stanton* v. *Weldy*, 19 Cal. App. 374, [126 Pac. 175].) The question must, therefore, be determined by an examination of the evidence.

In so far as the consideration recited in the agreements consisted of services performed by Royer for the deceased husband of Mrs. Conn in his lifetime, it was not sufficient to support the agreement. She was under no legal or moral obligation to pay for such services and her agreement to do so, made after his death, is to be regarded as purely voluntary and without binding force. (*Rosenberg* v. *Ford*, 85 Cal. 612, [24 Pac. 779]; *Sullivan* v. *Sullivan*, 99 Cal. 193, [33 Pac. 862]; *Chaffee* v. *Browne*, 109 Cal. 220, [41 Pac. 1028].)

Under the first agreement Royer was to act as Mrs. Conn's agent to buy the machinery referred to therein, ship it to Los Angeles, secure a site and set up the machinery ready for operation. He was to be thereafter the general manager of the factory and to continue in that capacity until the net profits repaid the cost of the machinery. This was the entire consideration to be rendered by him.

The agreement of 1911 does not purport to express any consideration, except the settlement and adjustment of previous dealings and of all existing difficulties between them.

The finding being against Royer on this subject, every fact against him of which there is a reasonable inference arising from the evidence is to be taken as proven. Applying this rule, the finding of the court is supported by the evidence.

Frederick Conn, the husband of Mrs. Conn, died in August, 1907, only a few weeks prior to the making of the first agreement. Before his death he and Royer and several other persons were stockholders and directors of a corporation, known as the Electric Razor Company, which was carrying on a razor factory. Royer was general manager and president of this corporation. It continued to operate the fac-

tory, under the management of Royer, for several years after
Frederick Conn's death. The plant referred to in the agree-
ment of 1907 was never erected, established, or operated, no
site therefor was ever secured, nor was Royer ever appointed
manager of such a plant. After the execution of the agree-
ment of 1907, this company needed more machinery, and
Mrs. Conn, it appears, agreed to buy it and allow it to be used
by said company under a lease. Royer, being general man-
ager at that time, went to Chicago with one Brigham to
buy this machinery. Brigham bought the machinery, it was
shipped to California, and Mrs. Conn paid for it. The cor-
poration paid Royer his railroad fare on the trip. The
agreement of 1907 did not authorize him to buy machinery
to be used in the plant of the Electric Razor Company.
Obviously, this was not the machinery referred to in that
agreement, and Royer in going east to buy it was not acting
as her agent under that agreement. The court below might
justly and reasonably have inferred that he was acting as
general manager for the company. It is true, he testified that
he bought it for Mrs. Conn to be leased to and to be used
in the factory. As the machinery was apparently to belong
to her, when purchased, he could truly say, in that sense, that
it was bought for her, but it would not follow that she
employed him to buy it. The fact that he was the manager
of the Razor Company which paid his expenses raises a much
stronger and more reasonable inference that he was acting
for that corporation in the matter. The court below doubt-
less took this view of the transaction. No other proof of
any services by him to her was given. The services contem-
plated by the agreement of 1907 were, therefore, wholly want-
ing, the enterprise there described was abandoned, or at all
events was never begun, and no obligation from Mrs. Conn
to Royer arose therefrom.

The evidence with reference to the second agreement tended
to show that there was no differences to settle nor dealings
to adjust between Royer and Mrs. Conn. There was no evi-
dence that there had been any dealings between them which
could be the basis of a claim by him upon her, except the first
agreement, which, as we have said, furnished no foundation
for such claim. The circumstances tend to support the
theory that the second agreement was voluntary, if, indeed,
it was not an attempt to obtain an unfair advantage of a

feeble, decrepit, and ignorant old woman. The court below, however, exculpated Royer as to the charge of undue influence and rested the decision entirely on the fact of want of consideration. We see no reason for interfering with its decision.

There are no other points of sufficient merit to require mention.

The judgment is affirmed.

Sloss, J., and Lawlor, J., concurred.