[Civ. No. 1650. Fourth Appellate District.—May 27, 1937.]

ROBERT TODD BROWNFIELD, a Minor, etc., Respondent, v. E. T. McFADDEN, as Trustee, etc., et al., Appellants.

Forgy, Reinhaus & Forgy and A. M. Bradley for Appellants.

Launer & Thompson and Drumm, Tucker, Martell & Drumm for Respondent.

MARKS, J.—This action was instituted to recover from a trust estate, of which E. T. McFadden is trustee, the sum of $18,000, besides interest, costs and attorneys' fees. The plaintiff had judgment as prayed for and certain of the defendants have appealed. For a proper understanding of the reasons for the conclusions reached by us it is necessary to detail many of the involved facts disclosed by the record.

H. J. Brownfield has been and is the duly appointed, qualified and acting guardian of the person and estate of Robert Todd Brownfield, a minor. Between January 3, 1927, and March 30, 1931, Reeves Aylmore was executor of the last will and testament of Otto S. Lewis, deceased. Between the last-mentioned date and about October 14, 1932, Aylmore was trustee of a testamentary trust created by the last will and testament of Otto S. Lewis, deceased, and established in the decree of distribution of his estate. On October 14, 1932, E. T. McFadden was appointed trustee of the trust estate in the place of Reeves Aylmore. The other appellants are beneficiaries of the trust.

On July 25, 1930, Aylmore secured an order from the probate court permitting him to borrow $18,000 to pay debts of the estate, expenses of administration and past due legacies. This order was amended on August 4, 1930. It directed Aylmore, as executor, to execute a promissory note for $18,000, due in three years, with interest at a rate not to exceed seven per cent per annum payable semi-annually, and to provide that in case suit should be brought on the note the plaintiff might recover reasonable fees for his attorneys. It was also provided that there be pledged as security for the loan a contract for the sale of real estate dated June 14, 1916,

wherein Otto S. Lewis was the seller and Charles H. Stanley the buyer and upon which there was an unpaid principal balance of about $48,000. H. J. Brownfield as guardian secured an order permitting him to make the loan upon the terms and with the security just mentioned. Aylmore as executor executed the note, secured by a pledge of the contract, and received the $18,000 which went into the funds of the estate.

About November 17, 1930, Stanley elected to pay the balance due on his contract of purchase. The guardian, at the request of Aylmore, petitioned the probate court for authority to release the contract. This permission was granted upon the condition that $18,000 of the purchase price be deposited in a bank and there remain intact subject to further order of the court. While Aylmore was not a party to this proceeding he had actual knowledge of it and of the terms of the order. Aylmore collected in excess of $46,000 from Stanley, which was all deposited in the executor's general account about December 18, 1930. At no time was $18,000, or any part of it, segregated as contemplated in the order.

On December 18, 1930, Aylmore filed his petition to invest $18,000 of the estate funds in Vista Irrigation District bonds and to use these bonds as security for the $18,000 note. The order permitting this to be done was filed the same day. The proceeding was *ex parte* and no notice was given as required by sections 1528 and 1578 of the Code of Civil Procedure, in effect at that time. In his petition Aylmore alleged that he had investigated the financial condition of the Vista Irrigation District and found it good. In the prayer of the petition he requested authority to use estate funds not to exceed the sum of ''$18,000.00 for the purpose of purchasing the bonds of the Vista Irrigation District at the market price amounting to $18,000.00 par''. The petition was carefully drawn with the evident purpose of conveying the impression that the bonds were worth their par value which was then their market price and of concealing the facts that they were then selling on the market for considerably less than par. Aylmore paid $15,584.71 for the bonds, according to the admission of the pleadings. However, in his final account he set forth the amount of the payment as $13,820. The trial court found that these bonds had a market value of not more than $9,000 at the time of the trial.

Neither the guardian nor his attorney had any knowledge or notice of this proceeding. The first intimation either had of it was when Aylmore appeared in the office of the attorney for the guardian with the bonds and stated to him that the probate court had made an order releasing the $18,000 segregated in the bank, directing that it be invested in the bonds and that the bonds be delivered as security for the $18,000 loan. The attorney objected to receiving the bonds as security for the note and demanded additional collateral which Aylmore promised to furnish. With that understanding the attorney received the bonds. While the record is not entirely clear on that question it seems probable that another executor's note was prepared and executed at that time in which the bonds were described as collateral security. We will assume that such second note was given. It does not appear that the attorney for the guardian then knew that the order of December 18, 1930, had been obtained *ex parte* and without conforming to the requirements of section 1528 and 1578 of the Code of Civil Procedure.

After the attorney for the guardian learned that a decree of distribution had been rendered in the estate of Lewis he requested additional security from Aylmore who was then the trustee of the trust estate. This attorney requested the additional security that had been promised and also that Aylmore as trustee execute a new note. Aylmore agreed to give as additional collateral a note of Knute B. Norswing and Gunhild Norswing upon which there was an unpaid principal of about $33,000. This note belonged to the trust estate and was secured by a mortgage on land in the state of Oregon. The guardian secured permission of the probate court to accept the new note of the trustee with the Vista Irrigation District bonds and the Norswing note and mortgage as collateral.

Shortly thereafter the attorney for the guardian again interviewed Aylmore and had with him a form of note describing as collateral the bonds and the Norswing note and mortgage. Aylmore agreed to execute the note as trustee and give the bonds as collateral but said he could not deliver the Norswing note and mortgage at that time. The description of the Norswing note and mortgage was eliminated from the note which was then executed by Aylmore as trustee. Default was made in the payments of interest and the principal of this note and this action followed.

The powers, pertinent to this appeal, given to the trustee in the decree of distribution are thus set forth:

"In further trust with full power and authority to hold, manage, care for, transfer, hypothecate, encumber, invest, reinvest, sell, convey, handle and dispose of all of said property for the purpose of carrying out the purposes of said trust."

It is not seriously contended by appellants that these powers do not include authority to execute a promissory note for the amount of a preexisting debt and pledge property of the trust estate as security for the payment of such note.

The note given by the trustee differed from the first and second executor's notes only in the date and in the collateral security described in it which was pledged to secure it, and in the signature of Aylmore as trustee instead of executor.

The contention of appellants is thus set forth in their brief:

"The evidence shows without dispute that the loan of $18,000.00 by the plaintiff to the estate of Otto S. Lewis was secured by a pledge of specific personal property and was enforceable against this property only. The evidence likewise shows without dispute that the plaintiff through his guardian was entitled to collect the entire proceeds of the pledge and retain in his hands sufficient money therefrom to discharge his obligation, but that the plaintiff instead permitted the investment of his share of the proceeds in certain bonds which he retained as a pledge. It is submitted, therefore, that the note executed by Aylmore as trustee of the estate of Otto S. Lewis was without consideration and that the plaintiff is entitled to the 18 Vista Irrigation bonds only and that the court erred in giving the plaintiff judgment for the sum of $23,918.50, payable out of all the assets of the trust estate."

Various questions are vigorously argued by the parties, such as the validity of the second executor's note and the validity of the pledge of the bonds to secure it as well as the general liability of the estate of Lewis (not the trust estate) for a deficiency remaining after the security given for the executor's notes had been exhausted. (See secs. 1528 and 1578, Code Civ. Proc.) Were this an action on either of these notes such arguments would have compelling force. It is not such an action. It is an action on a note given by the trustee after the assets of the estate had been delivered to him under the decree of distribution. In the last analysis the controlling question here is the consideration,

or lack of it, given for the trustee's note. The prior transactions of the parties during the administration of the Lewis estate are only important as they bear on that question.

It is not questioned that the original executor's note with the pledge of the Stanley contract was duly authorized and formed a valid obligation of the estate of Lewis. The guardian paid Aylmore as executor the full amount of the loan and Aylmore accounted for it. The trial court found that all of the $18,000 went into the Lewis estate and became a part of it. Ten thousand dollars went to pay a prior indebtedness of that estate and $7,500 to pay expenses of administration. As far as the record discloses the balance of $500 remained in the general assets of the estate and passed into the trust fund on distribution. It is admitted that no interest was paid since some time in 1932 and that the total amount of the principal remains unpaid. The finding that the Vista Irrigation District bonds had a market value of not more than $9,000 at the time of the trial is not questioned.

If we correctly understand the parties they do not seriously question the right of the plaintiff to recover something on the indebtedness. They differ sharply as to the source of the funds to be applied on the debt. The appellants maintain that the only fund available for this purpose is that to be derived from the sale of the bonds. They do not question the amount of the judgment as representing the amount of the original loan and interest but object to its being recovered in full from the general assets of the trust estate. Respondent seeks to maintain the judgment in its entirety as collectable from the trust funds.

While appellants insist that the plaintiff must be satisfied with the amount he may recover by the sale of the Vista Irrigation District bonds, neither party very seriously argues that the transaction which resulted in giving the second executor's note secured by the pledge of the bonds was legal. In this conclusion we are constrained to agree. Too many of the necessary steps required by law to permit an executor to pledge estate property were omitted (Secs. 1528, 1578, Code Civ. Proc.) ▮ Certainly a probate court does not have power to make an *ex parte* order authorizing an executor to borrow money, execute a promissory note and pledge an asset of the estate to secure it. Such procedure is not authorized by law. The guardian was not authorized by any order to accept this executor's note se-

cured by a pledge of the bonds. The last authority given him prior to the date of the second note was to surrender the Stanley contract for collection on condition that the executor deposit in an authorized bank the sum of $18,000 to be collected on the Stanley contract, there to be held subject to further order of court.

We must proceed to the legal question of consideration, if any, for the trustee's note. It is evident that if there was a valid consideration for it the judgment should be affirmed, otherwise it must be reversed.

A contract is supported by a sufficient consideration if there is some benefit to the promisor or detriment to the promisee regardless of the amount of the benefit or detriment. (Sec. 1605, Civ. Code; 6 Cal. Jur. 168; 6 Ten-year Supp. 73, 74.) The cancellation of a preexisting debt, the release of security or the forbearance to sue, even though it subsequently appear that the forbearer might not have been successful in the suit, furnish sufficient consideration to uphold a contract. (6 Cal. Jur. 172, 173, and cases cited; cases cited in 6 Ten-year Supp. 74, 75.) These rules are too firmly established in California to need further citation of authority.

The permission of the probate court given to the guardian to surrender the Stanley contract for the purpose of collection was made upon the express condition that $18,000 of the amount collected by the executor be segregated and deposited in a bank and there held subject to further order of the court. While the executor was not a party to this proceeding he had knowledge of the terms of the order. The estate accepted the benefit of the order and should have performed the condition. As it did not do so the guardian might have instituted an action to restore the security or the money into which it had been converted, or so much of it as might have been deemed necessary to secure the note. We are not so much concerned with the probable success of such an action as in the fact that some such proceeding might have been instituted in good faith by the guardian. The executor had committed a wrong which injured the estate of the minor and for this wrong there should have been a remedy. There was no agreement to forbear such a suit but there was an actual controversy between the parties which might have resulted in litigation. The guardian at all times demanded ample security for the loan. The executor prom-

ised to furnish such security but did not do so. His duplicity deceived not only the guardian and his attorney but also the probate court. That there was a real controversy between the parties over the security to be given for the debt seems too clear to permit of doubt. This controversy was finally settled, temporarily at least, by the trustee giving the note in question here, secured by the Vista Irrigation District bonds. That this was only a temporary compromise of the dispute seems evident from the fact that Aylmore agreed to furnish additional security, the Norswing note and mortgage, in about six months. Nevertheless it was a present completed compromise that settled an actual controversy between the parties and as such furnished consideration for the note.

Section 1606 of the Civil Code provides as follows:

"An existing legal obligation resting upon the promisor, or a moral obligation originating in some benefit conferred upon the promisor, or prejudice suffered by the promisee, is also a good consideration for a promise, to an extent corresponding with the extent of the obligation, but no further or otherwise."

This section has been invoked principally to sustain a promise to pay a debt barred by the statute of limitations or discharged by proceedings in insolvency. (*Chabot* v. *Tucker,* 39 Cal. 434; *Lambert* v. *Schmalz,* 118 Cal. 33 [50 Pac. 13]; *Ferguson* v. *Larson,* 139 Cal. App. 133 [33 Pac. (2d) 1061].) The rule of the section has been extended beyond those cases in which it has been so applied.

In *Estate of McConnell,* 6 Cal. (2d) 493 [58 Pac. (2d) 639], it is said:

"California cases have construed said code section to mean that 'a moral obligation is sufficient to support an express promise, where a good and valuable consideration has once existed'. (6 Cal. Jur. 181, sec. 124; *Sullivan* v. *Sullivan,* 99 Cal. 187 [33 Pac. 862]; *Peek* v. *Peek,* 77 Cal. 106 [19 Pac. 227, 11 Am. St. Rep. 244, 1 L. R. A. 185]; *McCormick* v. *Brown,* 36 Cal. 180 [95 Am. Dec. 170]; *Southern Pacific Co.* v. *Prosser,* 122 Cal. 413 [52 Pac. 836, 55 Pac. 145]; *Bickerdike* v. *State,* 144 Cal. 681 [78 Pac. 270]; *Pacific Rys. Adv. Co.* v. *Carr,* 29 Cal. App. 722 [157 Pac. 529]; *Royer* v. *Kelley,* 174 Cal. 70 [161 Pac. 1148]; 13 Cor. Jur. 360.)"
(See, also, *Bernstein* v. *Downs,* 112 Cal. 197 [44 Pac. 557]; *Bank of Yolo* v. *Bank of Woodland,* 3 Cal. App. 561 [86

Pac. 820]; *Carrington* v. *Smithers,* 26 Cal. App. 460 [147 Pac. 225].)

The rule established by that section would seem to be applicable here. There was at one time a valid and binding promise on the part of the executor to repay the loan, which promise was secured by ample security. Whether or not the benefit of the security was lost largely through the manipulations of the executor, we need not decide. Both parties seem to accept that view in some of the arguments in their briefs.

The facts of this case would seem to bring it within the spirit of the section. The full sum of $18,000 was paid by the guardian to the executor and by him placed among the assets of the estate. The trust fund was enriched by that amount for if all or nearly all of that money had not been used to pay an antecedent debt and expenses of administration other estate funds would have been used for those purposes. As the trust estate has been thus enriched by the loan it would seem there should be a moral obligation on its part to repay the loan which should be sufficient consideration to support the note of the trustee given for the prior debt. If this is true the general assets of the trust estate should be held liable for the payment of the note and judgment upon it.

If we should adopt the theory that the execution of the second executor's note and the pledge of the Vista Irrigation District bonds was a void transaction because it was not authorized by any order of court, and there are strong arguments in support of such conclusion, it would follow that there was ample consideration to support the trustee's note and pledge of the bonds. As we have observed the order permitting the guardian to release the Stanley contract was made on the condition that $18,000 collected by the executor on the Stanley contract be impounded subject to the order of the court. The executor had actual notice of this order and the estate should not be permitted to accept its benefits and escape its burdens. Instead of the $18,000 in cash to be held as security for the note the trustee was permitted to substitute bonds that cost at least $2,415.29 less than $18,000. Thus the estate and the trust had the use of that amount of money which is a sufficient benefit to the promisor to support the new contract. A detriment to the

promisee is established by the reduction in the value of the collateral pledged to secure the indebtedness.

■ As the note of the trustee is a legal obligation of the trust estate it was not necessary for plaintiff to exhaust the security before bringing suit upon it. (*Commercial Sav. Bank* v. *Hornberger,* 140 Cal. 16 [73 Pac. 625]; *Baird* v. *Olsheski,* 116 Cal. App. 109 [2 Pac. (2d) 493].)

Judgment affirmed.

Barnard, P. J., and Jennings, J., concurred.

A petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on July 26, 1937.