[Civ. No. 6291. Third Appellate District.—March 18, 1940.]

In the Matter of the Estate of ALFRED ALBERTS, Deceased. NETTIE SPINNER, Appellant, v. CHARLES G. JOHNSON, State Treasurer, et al., Respondents.

George W. Rochester for Appellant.

Earl Warren, Attorney-General, and Albert Zangerle, Deputy Attorney-General, for Respondents.

PULLEN, P. J.—This is an appeal from a judgment rendered against appellant upon an action brought to establish a trust in moneys left in a bank account.

The circumstances giving rise to appellant's claim as evidenced by the testimony and which is not contradicted, are that appellant, Mrs. Nettie Spinner, met Alfred Alberts some time in the year 1911, and they became and remained friends until the time of his self-inflicted death on May 15, 1933. In 1921 Nettie Spinner married Andrew Spinner, a member of the Los Angeles Police Department. When it was discovered, shortly after the marriage, that Mr. Spinner was also a friend of Alberts, he was invited to visit them at their home, and thereafter became a frequent visitor at their home, and on three or four Christmas days was a special guest at dinner. It appears that Alberts had no relatives or close friends, and was considerably older than Mr. and Mrs. Spinner.

Prior to July, 1931, Alberts had opened a savings account in his own name with the Security Trust and Savings Bank of Los Angeles. At the time of his death on May 15, 1933, there was on deposit in such account, approximately $14,000. No heirs having been discovered during the administration, this money, which constituted the entire estate of Alberts, was, on February 21, 1935, distributed to the State of California as provided by law, and is still held by the state treasurer as custodian.

Some time in July, 1931, Alberts went to see Mr. Spinner and turned over his bank book to him, stating that it was to be given to Mrs. Spinner and that he, Alberts, was giving Mrs. Spinner his money as represented by the savings account in the bank book. The bank book was given to Mrs. Spinner, and Mr. Spinner told her of the conversation with Alberts. Mr. and Mrs. Spinner testified that on a number of occasions subsequent to this event Alberts stated to them that the money was for Mrs. Spinner; that it would take care of her if anything happened to him. Mrs. Anderson, a friend of Mrs. Spinner, testified that on one occasion while in the Spinner home, Alberts had stated to her that he had given everything to Mrs. Spinner.

In July, 1931, not long after Alberts had given the bank book to Mr. Spinner, he requested that it be returned to him for the purpose of making a deposit or withdrawal. The request was granted, and after Alberts had used the book for the purpose stated it was returned to Mrs. Spinner. Thereafter the bank book was turned over to Alberts at various times for the purpose of making deposits or withdrawals, and always returned to Mrs. Spinner. Toward the last of April, 1933, the bank book was again given to Alberts and he failed to return it to Mrs. Spinner.

Alberts shot himself on May 15, 1933, and died without making any statement. The bank book, together with other personal belongings, was found on his body. The book was enclosed in a regular bank envelope and on each side thereon Alberts had written the following: On one side he had written ''Good-bye M. Spinner x x,'' and on the other side, ''For Mrs. Spinner. All for you,'' signing his name, ''A. Alberts''. A separate writing enclosed in an ordinary envelope was also found on the person of Alberts. Written upon the envelope was the following: ''Notify A. C. Spinner, C/o Georgia Street

Division Detective Bureau, Los Angeles Police Department.'' Upon the paper was written, ''Lotty Spinner. I send you my bank book. You shall have all my belonging including every in my room in the hotel. Usit for the sick only. A. Alberts. P. S. For charity only.''

We are of the opinion that the judgment appealed from is supported by the evidence and implied findings and that there has been a failure to show the creation of a trust for the benefit of appellant.

■ The existence of a trust must be established by evidence that is clear and convincing and this question as to whether the evidence is of such a nature is one to be determined by the trial court. ■ The establishment of a trust *in praesenti* is a necessary element to the creation of a trust just as it is with the consummation of a gift. The creation of a trust is a present disposition of property, and not an undertaking to make a disposition in the future. The only important difference between a gift and a voluntary trust is that in the case of a gift the thing itself passes to the donee, while in the case of a trust the actual, beneficial, or equitable title passes to the *cestui que trust,* while the legal title is transferred to a third person, or may be retained by the person creating it, to hold for the purpose of the trust. (*Norway Sav. Bank* v. *Merriam,* 88 Me. 146 [33 Atl. 840].) ■ The rule is well established that equity will not give effect to an imperfect gift by enforcing it as a trust, merely because of the imperfection, since, to do so would be to give effect to an intention never contemplated by the maker. (*Noble* v. *Learned,* 153 Cal. 245 [94 Pac. 1047].)

■ The present action was one to enforce a trust in the bank account money and was not based on the theory of a gift. However, it cannot be denied that the statements made by Alberts to appellant and her husband, together with the circumstance of the handing over of the bank book to appellant in July, 1931, indicated a voluntary assignment or a gift of the money represented by the savings account in the bank book. It is not denied that a trust could be created in bank account moneys by handing the savings account book to the intended beneficiary and by using the proper words of manifestation of a trust.

The cases upholding the creation of a trust in savings accounts which are cited by the appellant, discloses facts which

do not appear in the present case. In those cases the bank books were either held by the depositor himself as trustee, or they were transferred to a third person, as trustee, for the beneficiary. As stated, the delivery of the bank book to the party intended to be beneficially interested indicates a gift rather than the creation of a trust.

The evidence here in regard to the possession and control of the bank book discloses, however, that at the request of Alberts it was returned to him for the purpose of making withdrawals and deposits in his account. Alberts never completely divested himself of control over the bank book or of control over the money represented by the bank book. Complete divestment of all control by the donor is a necessary essential to constitute a valid gift of personal property. (13 Cal. Jur. 32, sec. 1.) This is true regardless of whether the delivery of the property is actual or symbolic. This essential element necessary for a valid gift not being present, appellant has no interest in the savings account of Alberts by way of gift.

Assuming that Alberts intended the appellant to have an interest other than that as bailee at the time the book was turned over to appellant, it is our opinion that the evidence fails to support the creation of either a private or charitable trust. In order to uphold the creation of a trust it was necessary that the trust should have been established *in praesenti* in July, 1931, when the bank book was turned over to appellant. The evidence does not support such a conclusion. A perusal of a great number of cases wherein it has been held that a trust was created in a savings account fails to disclose the existence of circumstances presented in this case. Those cases show that the depositor either opened an account in his own name as trustee, or in his own name as trustee for a named beneficiary, by the execution and delivery of a separate writing manifesting the trust. The cases also support the validity of a bank account trust where the settlor merely makes an oral declaration that he is holding the bank account money in trust. It will be noted, however, that in no case where there has been a finding of a valid trust pursuant to an oral agreement, has there been a transfer of the bank book to the intended beneficiary.

It would seem to be settled in California that a valid trust may be created in a savings account with power re-

maining in the settlor to withdraw part or all of the money where the settlor is named as trustee. The beneficiary is entitled to the balance on hand at the death of the depositor, if no other disposition has been made by the settlor. This is obviously a revocable trust. A deposit of this nature is termed a "tentative trust" by the New York cases. The delivery of the bank book to the intended beneficiary is not, however, contemplated as one of the acts of the settlor in conformity to the continuation of such a trust. This proposition finds support in *In the Matter of Totten,* 179 N. Y. 112 [71 N. E. 748, 1 Ann. Cas. 900, 70 L. R. A. 711], a leading case in that state in regard to "tentative trusts". At page 752, the law is stated as follows:

" . . . It is a tentative trust merely, revocable at will, until the depositor dies or completes the gift in his lifetime by some unequivocal act or declaration such as delivery of the passbook or notice to the beneficiary."

A trust of this nature would not exist if the depositor put it out of his power to control the money in the savings account. If, as contended for in the present case, the appellant became a trustee and held legal title in and to Alberts' savings account, it was clearly inconsistent with the theory of a trust that Alberts retained power to take back the bank book and make deposits and withdrawals.

The writing on the bank book envelope and the writing on the separate piece of paper enclosed in an envelope which directed that Mr. Spinner be notified were properly admissible for the purpose of determining the intent of Alberts at the time of the alleged creation of the trust in July, 1931. These writings could not be given the effect of creating a trust at the time of their execution nor upon the death of Alberts. To give them such an effect would be to contravene our statutory requirements as to the prerequisites of a written will. Testamentary dispositions must conform, and be given effect, only through a validly executed will.

Resorting to the writing on the separate piece of paper for the purpose of determining the intent of Alberts in July, 1931, it clearly appears that a trust for the benefit of appellant was not intended; or that if Alberts did intend a trust solely for the benefit of Mrs. Spinner he had changed his mind, and so indicated by his writing on this paper. A trust, if ever created, was revocable by Alberts. The words used by

Alberts: "Usit for the sick only" and "P.S. For charity only," are clear and of common meaning to all. The explanation offered by appellant that Alberts intended her to use the money for her own sickness, is not satisfactory. He has not used the words, "for your sickness" or "for your charity". It is true that Alberts had written on one side of the bank book envelope, "For Mrs. Spinner. All for you," but this writing only raised a conflict in the evidence as to the intention of Alberts. This conflict must be resolved against the creation of a trust for the benefit of appellant, when the writing on the separate piece of paper is considered.

Appellant having failed to show a clear, unequivocal, and convincing transfer of the bank account moneys to her for the use and benefit of herself, it cannot now be claimed that she is a trustee of the money for charitable purposes. This suit was not one for the purpose of enforcing a charitable trust, and no evidence for such a purpose was introduced. The separate writing left by Alberts cannot at this time be given the effect of creating a charitable trust, as to do so would be to contravene the statutory requirement necessary for a valid will.

Appellant having failed to establish either a private or a charitable trust, it is not necessary for this court to determine the question as to whether this action was proper under section 1027 of the Probate Code.

The judgment is affirmed.

Thompson, J., and Tuttle, J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on May 16, 1940.