[Civ. No. 4665. Fourth Dist. June 14, 1954.]

BARBARA JEAN FRITZ, Appellant, v. FRANCOISE B. THOMPSON, as Executrix, etc., Respondent.

Lawrence W. Young for Appellant.

Dearing, Jertberg & Avery for Respondent.

GRIFFIN, J.—Plaintiff Barbara Jean Fritz is the daughter, by a former marriage, of decedent Elmer Butler Thompson. Defendant Francoise B. Thompson, the surviving wife, is executrix of his estate.

Plaintiff's claim against defendant executrix for $5,000 is predicated, in the first cause of action, upon a claim filed in his estate. In the second and third causes of action the allegation is that the defendant executrix holds that sum of money under some claimed trust for the benefit of plaintiff. The detailed findings of the trial court fairly set forth the nature of the claim. It found that about October 1st, 1951, before the death of decedent, in consideration of his love and affection toward plaintiff, and in order to assist her in the construction of a new home in Visalia, and with the full knowledge and approval of the defendant, as the wife of the decedent, decedent orally promised plaintiff that he would give her $1,600 for the purchase of a lot to be selected by her and approved by decedent, and that if she and her husband would build a house on such lot (the plans for which were to be approved by decedent and to cost between $14,000 and $15,000, and if the plaintiff would arrange to finance the construction of the house) the decedent would give to her at some stage of the construction to be determined by decedent, the sum of $5,000 to apply on the cost of the house; that before the death of decedent, he orally requested plaintiff to secure plans and specifications for the house, but that decedent did not, at any time prior to his death, promise her that he would immediately purchase for her a vacant lot

in Visalia upon which the house was to be constructed, and that he did not, prior to his death, promise her, as claimed in her complaint, that he would immediately give her an additional sum of $5,000 in cash to be applied on the cost of the construction of the new home; that on October 1st, 1951, decedent did suggest, and plaintiff orally agreed, that she would take immediate steps toward the employment of a general contractor to construct the new home, and to obtain from the contractor plans and specifications therefor; that about said date, decedent gave to plaintiff a check in the sum of $1,600, to enable her to purchase a lot in Visalia, and that the check remained in the possession of the plaintiff until after the death of decedent, and the defendant Mrs. Thompson, on October 5, 1951, instructed the bank to honor the check; that the proceeds of the check were credited to the account of plaintiff and her husband and she used the proceeds to purchase a vacant lot in Visalia for $1,600; that no house was ever constructed on the lot by plaintiff or her husband and she never arranged to finance its construction; that about October 1st, 1951, before the death of the decedent, plaintiff did select a general contractor who she desired to construct the proposed new home, and orally instructed him to prepare plans and specifications therefor; that the contractor commenced to prepare plans and specifications beginning about October 2nd, 1951; that the work thus done by the contractor, prior to the death of the decedent, on the plans and specifications, was preliminary and not substantial, and that the principal part of the work of preparing such plans and specifications was done by the contractor after the death of the decedent and after the contractor and plaintiff knew of the death of the decedent; that a minor and unsubstantial portion of plaintiff's obligation to the contractor was incurred by plaintiff prior to the death of decedent; that plaintiff selected the contractor and made arrangements with him solely in reliance on the promise of decedent to make a gift to her as aforesaid; that the decedent did not, prior to his death, deliver to defendant, Mrs. Thompson, the executrix, the sum of $5,000 in cash in trust for plaintiff to be used by her for the immediate construction of a new home for plaintiff; that plaintiff did not, at the time referred to in her second amended complaint, intend to immediately construct her new home, and there was not due or owing from defendant Mrs. Thompson, as executrix or otherwise to plaintiff, the sum of $5,000 at any time; that defendant refused,

and continues to refuse, to pay plaintiff said $5,000, although plaintiff has demanded payment of that amount; that defendant executrix, after the death of decedent, did not orally declare to plaintiff that she was holding in trust for her the sum of $5,000 in cash, to be used in the immediate construction of a new home by her in Visalia, and did not execute in writing and deliver to plaintiff a statement in which defendant declared in substance that she was holding said $5,000 in cash in trust for her to be used by her in the immediate construction of her new home.

It further found that on October 1st, 1951, Mr. Thompson, the decedent, gave to plaintiff a check for $1,600; that he died on October 3, 1951, and after his death plaintiff presented the check to the bank for payment but the bank refused to pay it because of the death of decedent; that thereafter defendant executrix instructed the bank to honor it because of the great disappointment expressed by plaintiff in being unable to cash it; that accordingly the check was honored and paid from the bank account of Thompson and Ducey.

It then found that by will dated June 10th, 1947, Mr. Thompson, the deceased, made a bequest to plaintiff in the sum of $5,000, which sum was paid to her from the estate. It was then found that this bequest was not intended by decedent to be used by plaintiff for the purpose of assisting her in acquiring a home; that defendant executrix is not indebted to plaintiff in any sum whatsoever, and that the sum of $5,000 promised as a gift to plaintiff by decedent was not paid. It concluded that plaintiff was not entitled to judgment under the allegations contained in the first cause of action of her complaint since decedent's offer to make a gift to plaintiff in the sum of $5,000 did not ripen into a binding contract and did not become irrevocable by reason of any act of plaintiff prior to decedent's death, and was therefore revoked by his death. The evidence, although contradictory in certain respects, clearly supports these findings.

It is plaintiff's contention that the promise of decedent was made to assist the plaintiff in constructing her home; that when the promise was made it was the beginning of a unilateral contract; that when part performance thereof was made by plaintiff with the knowledge of decedent and defendant executrix, in employing the contractor and thereby incurring legal obligations, the contract then became a bilateral contract supported by a valid consideration, citing *Wilck* v. *Herbert*, 78

Cal.App.2d 392, 407 [178 P.2d 25]; that where a valid consideration exists in a contract the amount or value of the consideration cannot be considered by the court, citing *Brownfield* v. *McFadden*, 21 Cal.App.2d 208, 214 [68 P.2d 993]; and section 1605, Civil Code; that plaintiff not only suffered prejudice by incurring the obligation with the contractor to build her home, but she also expended money in paying for the draftsman; that this prejudice incurred by plaintiff was the direct result of the promise of her father to pay the $5,000; that the death of decedent cannot and did not affect the legal liability of the plaintiff to the contractor because the plaintiff in the lifetime of the decedent and with the knowledge and consent of decedent, incurred a legal liability to the contractor; that by incurring this liability during the lifetime of the decedent there became a legal contract between plaintiff and decedent to pay said amount, and that his subsequent death could not and did not relieve his estate from the payment of his legal obligation to plaintiff; that the plaintiff materially changed her position in reliance on the promise of her father, and therefore his estate is estopped from denying liability herein; that there is a moral obligation supported by sufficient consideration to compel the estate to pay said amount; that the defendant executrix, by her acts and conduct, either received $5,000 from the decedent in trust for the plaintiff or she constituted herself a trustee for said amount after the death of the decedent, citing such cases as *Grand Lodge I.O.G.T.* v. *Farnham*, 70 Cal. 158, 159 [11 P. 592]; *Board of Home Missions & C. E. of M. E. Church* v. *Manley*, 129 Cal.App. 541, 543 [19 P.2d 21]; *Los Angeles Traction Co.* v. *Wilshire*, 135 Cal. 654, 658 [67 P. 1086]; *Medberry* v. *Olcovich*, 15 Cal. App.2d 263 [59 P.2d 551]; 5 Stanford Law Review, page 783; and 1 Bogert on Trusts, page 506, pertaining to promissory estoppel.

It appears that the claimed oral promise of decedent to give plaintiff $5,000 was conditional. Those conditions were: (1) that plaintiff and her husband would build a house costing between $14,000 and $15,000 (which house was not built); (2) that it be built according to plans approved by decedent (which plans were not so approved); (3) that a lot be selected by plaintiff and paid for by decedent, and the site approved by him (which was not done); and (4) that if plaintiff would arrange to finance the construction of the house deceased would give her, at some stage of the construction to be determined by decedent, $5,000 to apply on the cost of the house. No such

arrangements were ever made, and no such construction of the house was ever commenced. It is clear that the gift was conditional, that there was no substantial performance, and the transaction never ripened into a binding, enforceable obligation. (*Bard* v. *Kent,* 19 Cal.2d 449 [122 P.2d 8, 139 A.L.R. 1032].) Furthermore, even if it could be said that decedent must be held to be bound by contract to plaintiff by reason of part performance on her part, her right to sue for the $5,000 would not arise until she had performed the whole series of acts required as conditions, which conditions were prescribed by the decedent who made the gift. Consequently, her suit on the first cause of action at the present time would be premature. The instant action, which is predicated upon a claimed individual's promise to make a gift to another individual, may be distinguished from the cases relied upon by plaintiff, such as *University of Southern Calif.* v. *Bryson,* 103 Cal.App. 39 [283 P. 949], holding that the note of each subscriber to a charitable, religious or educational institution, in which the subscribers are all interested, is generally held to support an adequate consideration authorizing its enforcement by the promisee where each note was conditioned upon the fulfillment of the pledges of the others to raise the full amount. ▇ The general rule is that a promise to pay a subscription is ordinarily a mere offer which, in the absence of a consideration therefor, may be withdrawn at any time before acceptance; that under such circumstances the death of the promisor revokes the pledge; and that a mere individual promise to subscribe to a cause is not usually supported by a consideration and is therefore *nudum pactum* and unenforceable. (*University of Southern Calif.* v. *Bryson, supra,* p. 48, and cases cited.)

As to the second cause of action the court found, upon sufficient evidence, that decedent did not, prior to his death, deliver to the defendant executrix the sum of $5,000 in cash in trust for plaintiff. Since there was no such transfer made, and since the court found that no such trust was created, the executrix, as such, could not be compelled to pay that amount to plaintiff. ▇ An ineffectual attempt to make a gift does not create a trust, and equity will not perfect an imperfect gift by establishing a trust when none was in contemplation, particularly when the full control of the property was maintained during life, without intent to vest any interest therein prior to death. ▇ In the case of a trust in per-

sonal property, it is for the trial court to determine as a question of fact whether the words and acts of the alleged trustor indicated with reasonable certainty an intention to create a trust, and the subject, purpose, and beneficiary of the trust; and if there is any evidence consistent with its finding that a trust was not created, the finding of the trial court must stand. (*Noble* v. *Learned,* 153 Cal. 245 [94 P. 1047].)

 The third cause of action is predicated upon the claimed theory that defendant Mrs. Thompson, in November, 1951, after some conversation leading up to it, wrote a letter to plaintiff which reads in part:

". . . thought I'd let you know what was going on, and sincerely, I will do all I can to get you started, but I must know just what is being planned before I can obligate myself.

"You will either have to get the plans and bids to me, and I will have to have some advice from Mr. Madson, Dad's advisor, or Mr. Jertberg, as really Dad left this in trust to me, I must do as he wanted, and to the best of my ability. It will have to be done on a purely business basis."

The testimony shows that plaintiff sent the plans and bids to defendant shortly thereafter, and subsequently some disagreement arose between the parties. It is contended that the language used in this letter created and constituted a trust; that under section 2221 of the Civil Code the necessary elements to create a trust in personal property are shown, and that plaintiff is the beneficiary of such trust; that when part of the property upon which the trust is embraced is commingled with other property of a similar nature, the trust property is identified with reasonable certainty; and that accordingly plaintiff is entitled to it, citing such cases as *Weiner* v. *Mullaney,* 59 Cal.App.2d 620, 631 [140 P.2d 704]; *Rollestone* v. *National Bank of Commerce,* 299 Mo. 57 [252 S.W. 394, 398]; *Cahlan* v. *Bank of Lassen County,* 11 Cal. App. 533 [105 P. 765]; and 1 Bogert on Trusts, page 506.

 In order for one who owns property to make himself a trustee of said property while retaining legal title, it is necessary that he use words or do acts which clearly denote his intention to relinquish his beneficial interest in the property "*in praesenti*" and to hold it for the benefit of another; that there be specific property to be held in trust by the trustor, as trustee, and an *absolute* parting by him with that beneficial interest which had been his up to the declaration of the trust. (*In re Lamb,* 61 Cal.App. 321, 329 [215 P. 109]; *Estate of*

*M. S. Webb*, 49 Cal. 541; *Noble* v. *Learned*, 153 Cal. 245 [94 P. 1047] ; *Molera* v. *Cooper*, 173 Cal. 259 [160 P. 231].)

The quoted words do not indicate an intention of Mrs. Thompson to create a trust herself, but at most only indicate her belief that it was the desire of decedent to create a trust taking effect after his death. Such a desire, being testamentary in character, could only be made effective by provision therefor in a properly executed will. (*Noble* v. *Garden*, 146 Cal. 225 [79 P. 883, 2 Ann.Cas. 1001] ; *Estate of Alberts*, 38 Cal.App.2d 42 [100 P.2d 538].)

The trial court was justified in finding that it was not clearly and unequivocally indicated by the writing that defendant executrix had any intention to *absolutely* part with, or did relinquish her beneficial interest in the sum of $5,000 *"in praesenti"* ; and that she did not hold the specified sum of $5,000 for plaintiff.

 Ordinarily, it is a question of fact for the trial court to determine in each case whether the evidence is of the nature required to prove a properly created trust (*Estate of Alberts, supra.*) There is sufficient evidence to support the finding of the court in this respect.

The trial court was likewise justified in holding that there was no substantial act or forbearance by plaintiff prior to decedent's death which would prevent, under the doctrine of promissory estoppel, the revocation of decedent's offer by reason of his death.

Judgment affirmed.

Barnard, P. J., and Mussell, J., concurred.