## THE JOBSHAVEN.

## THE IJSELHAVEN.

(Circuit Court of Appeals, Second Circuit. December 15, 1920.)

Nos. 60, 61.

1. **Contracts ☜247—Evidence held insufficient to show contract for greater compensation than that first contracted for.**

   Where, after libelant contracted to do stevedoring work for a specified price, its employés struck for higher wages, assuming that a contract to pay a higher price would have been supported by a consideration, evidence *held* insufficient to show any such agreement.

2. **Contracts ☜247—Party held to have burden of showing agreement to pay a higher price for work than that previously contracted for.**

   Libelant, who contracted with the masters of ships for the doing of stevedoring work for a specified price, had the burden of proving an agreement by the ships to pay a higher price because his employés had struck for higher wages.

Appeals from the District Court of the United States for the Eastern District of New York.

Suits in admiralty by the C. F. Starita Company, Incorporated, one against the steamship Jobshaven, her engines, etc., claimed by Lambertus Coolen, and the other against the steamship Ijselhaven, her engines, etc., claimed by Tjerk Drajer. From decrees in favor of the libelant (259 Fed. 306), claimants appeal. Reversed, with directions.

These suits in rem are, according to the libels, to recover for "necessary work, labor, and stevedoring services" upon the steamships above named. The libels do not further describe the nature of the work, etc., nor assert any contractual agreement for rate of compensation, but each claims a large sum of money as the "reasonable value" of said "stevedoring services." The answers severally plead an agreement prior to the rendition of any service whereby libelant "agreed to remove from the ship bunker coals and cargo which were then on fire or damaged by fire" at a certain rate, much lower than that (by inference) used by libelant in stating the demands of the libels.

Each answer states the amount admitted to be due according to claimants' versions of the transaction and pleads a written offer of consent to a decree in the case of the Jobshaven of $630.84, and in that of the Ijselhaven of $2,036.25, in each instance with costs to date of offer, viz. May 27, 1918.

All the testimony was taken by depositions. The court below granted decrees for the amounts demanded in the libels. Claimants appealed.

Kirlin, Woolsey, Campbell, Hickox & Keating, of New York City (L. de Grove Potter, George M. Lanning, and Jay T. Cooper, all of New York City, of counsel), for appellants.

☜For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Bullowa & Bullowa, of New York City (Emilie M. Bullowa, of New York City, of counsel), for appellee.

Before ROGERS, HOUGH, and MANTON, Circuit Judges.

HOUGH, Circuit Judge (after stating the facts as above). Decision herein depends upon the view taken of the evidence, measured by the pleading, rather than on debatable points of law.

A definite finding of fact, made by the trial judge, after seeing and hearing witnesses sharply contradicting each other, is rarely disturbed, though even this rule has exceptions (The Albany, 81 Fed. 968, 27 C. C. A. 28); but here all the evidence comes to us, as it did below, without the strengthening or weakening effect of the witnesses' mien and bearing.

Pleading in the admiralty is simple, but absence of technicality renders all the more important a comparison of what a man swears to in his pleading, what he swears to as a witness, and what his counsel advances in argument. Cf. Martin Cantine Co. v. Blackford (C. C. A.) 264 Fed. 100. The party in admiralty can rarely assert that the pleading was beyond his layman's comprehension.

This corporate libelant may for the purposes above stated be said to be one C. F. Starita, who is its president, made whatever arrangements were made with the claimants (the shipmasters), verified the libels, and is the witness without whom libelants have no case at all.

[1] These libels, identical in form, allege services unspecified except that they were of a stevedoring nature. A general contract at reasonable rates is the legal inference. A few days after they were filed the shipmaster's depositions were taken (in advance of answer), and it clearly appeared that, if these men told the truth, Starita, being informed that the bunker coal on both vessels was heated, if not actually on fire, and knowing that the cargoes were oil cake, made the lowest bid to remove this danger, and agreed to charge 50 cents per hour per man, with usual additions for night and Sunday work, supervision, and insurance. Shortly thereafter, and before any substantial amount of work was done, the base rate was by mutual consent advanced to 60 cents, but never was there any reservation or exception for strikes or similar occurrences, and never was any other or further bargain made. The rates subsequently charged were never mentioned until work completed.

Months later Starita testified, and first swore that he agreed to do the work at 50 cents per ton (not per man), yet afterwards, in answer to his own counsel, said that the base rate was 50 cents per man, and admitted that such contract was firmly made before a stroke of work done, nor did he claim any reservation or exception for strikes or the like.

He then stated that, after working about an hour and a half on one of the steamers, his workmen struck, and thereupon he refused to go on with the jobs, unless (as it was phrased in bills rendered long after work completed) the ships paid, "in accordance with rules and regulations of International Longshoremen's Association," amounts which as billed raise the base charge to either $1 per hour per man, or

$1.10, we cannot be sure which, and on this record it is impossible to say certainly why it should be one rather than the other, even according to libelant.

In explanation of this complete change of price, and as proof of a new contract, Starita testified, "When I was informed that the bunkers were on fire, I refused to do the work unless the captain paid me the union rates per hour for each man, which he agreed to do." This is merely false on his own story; for he had just sworn that, when he got the job by underbidding other stevedores, one shipmaster (both saw him together as the ships belong to same owner) said, "Our coal in the bunkers is getting too hot, and we believe that they are on fire." Starita replied, "Are you sure of that?" to which the captains said, "Yes, sir; we have been pumping water in there for 24 hours."

As there is nothing contradicting the statement that Starita's men struck for higher pay and he acceded to the rise, we may believe it, but the attempt to justify a higher charge to the ships by pretending that the fact of fire was only learned after work started wholly discredits him as a witness.

Gauging this story by his libels, it is notable that his whole claim rests on the theory that by reason and as the result of the stevedores' strike a new and very definite contract was made. There never was a general hiring, and there was confessedly an express contract, forbidding any such recovery as is here attempted, unless it terminated. Such pleading is, to put it mildly, disingenuous.

Let it be assumed as law that, if Starita broke his original agreement, and thereby conferred on claimants a lawful demand for damages, there might be in the waiver of such demand consideration for a new agreement to do the same thing at twice the money (Cf. Alaska, etc., Ass'n v. Domenico, 117 Fed. 99, 54 C. C. A. 485), but that question does not arise until it is settled in point of fact whether claimants ever did promise, with or without consideration, to pay the higher rates.

[2] We think that no such promise was ever made; but it is enough for this case to hold, as is plainly true, that the burden of proving such promise is on libelant, and it has not been borne by credible testimony. The amounts awarded in the court below are unexplainable if not excessive on libelant's own theory. The evidence does not enable us to ascertain satisfactorily just what is due, on the story of the shipmasters, which we adopt. But claimants should and may be held to their offers.

The decrees appealed from are reversed, and the court below directed to enter decree against the Jobshaven for $630.84 with costs to May 27, 1918, and against the Ijselhaven for $2,036.25 with like costs and without interest in either case. The claimants will recover one bill of costs on this appeal, and costs of District Court in each case after May 27, 1918.

Other matters have been argued, but we have disposed of the matter by the foregoing findings, and express no opinion on any other point.