UNITED STATES, for Use of MERRILL, v. GREAT AMERICAN INDEMNITY CO.

No. 298.

District Court, W. D. Louisiana, Alexandria Division.

June 10, 1941.

---

[7] Statement of Facts.

[10] Footnote 8, supra.

[11] Footnote 4, supra.

[12] Maryland Casualty Co. v. Givens, supra; Goodnow v. Stryker, supra.

Joseph A. Loret and Roland C. Kizer, both of Baton Rouge, La., for plaintiff.

Taylor, Porter, Brooks & Fuller and J. Elton Huckabay, all of Baton Rouge, La., for defendant.

PORTERIE, District Judge.

By a written contract dated the 16th day of October, 1939, between the United States and United Construction Company, a partnership composed of John Charles Barcelona and Sam Allelo, that partnership obligated itself to the United States to construct for the United States a certain public work, a levee, near Hamburg in the Alexandria Division of the Western District of Louisiana. The total amount to be paid under this contract was $14,666.28. In connection with the contract, United Construction Company furnished to the United States a payment bond for the sum of $7,333.14 with the Great American Indemnity Company as surety, dated the 24th day of October, 1939, for the protection of all persons supplying labor and material in the prosecution of the work provided for in the contract, for the use of each such person.

Then, the United Construction Company and Roy E. Merrill entered into a written contract dated the 3rd day of November, 1939. By this contract United Construction Company employed Mr. Merrill to work on the project for $50 per month plus one-third of the net profits. It also leased from Mr. Merrill a three-quarter yard bucket dragline for use on the project at a rental of $1,000 per month.

Mr. Merrill alleges that he furnished the dragline to the partnership and that the dragline worked on the project from October 16, 1939, until February 16, 1940, a period of four months; that he purchased from Doherty Hardware Co., Ltd., supplies amounting to $98.14 and delivered them to the partnership for use on the project, on account of which the partnership paid $52.68 and he had to pay the balance of $45.46; that he incurred and paid incidental expenses amounting to $24.68 in connection with the project; that the partner-

ship has never paid him anything on account of the rent of the dragline, the supplies or the incidental expenses except the sum of $1,000, paid on or about December 16, 1939, and the sum of $440 paid on or about February 16, 1940; and that therefore United Construction Company owes him a balance of $2,630.14. Mr. Merrill brings the action for this balance against the partnership's surety, the defendant herein. The action was instituted under the Act of Congress of August 24, 1935, c. 642; Sec. 2, 49 Stat. 794, 40 U.S.C.A. § 270b.

With regard to the claim for rent of the dragline, the first defense is that subsequent to the making of the above-described contract of November 3, 1939, Mr. Merrill and the partnership modified the contract by an oral agreement by which it was agreed that Mr. Merrill would accept $2,000 (two months at $1,000) for all of the work that his dragline might do on the project; that Mr. Allelo, who also furnished some equipment, would likewise take but two months of pay at $500 per month, the rate of pay agreed upon with him in the written contract. A joint venture is urged as being the nature of the modified contract. As to the claims for supplies and incidental expenses, the defense is that the supplies were not furnished to the partnership and the expenses were not incurred for the benefit of the partnership.

As a second defense, and in the nature of a reconventional demand, the partnership alleges that the plaintiff breached his written contract as orally amended "by locking the said dragline and refusing and denying the United Construction Company (the defendant) the use of said dragline in the performance of the said work described in the said contract and as a direct result of this breach on the part of the said Roy E. Merrill the United Construction Company was delayed in completing said job and greatly damaged, the damage to the said United Construction Company exceeding the sum of Two Thousand ($2,000.00) Dollars."

■ Also, during the course of the trial, the court permitted an oral amendment to be made by the defendant to its answer "to include an item of $98.00, charged by the United Construction Company against the plaintiff, for moving the dragline; further, an additional amount of $150.00, expenses advanced; another item of $50.00, expenses advanced; repairs to dragline, $199.20; dragline cable, $324.20; gas and oil (2 items) $93.12 and $62.02; miscellaneous expenses, $50.57, being all items paid out for the account of the plaintiff by the United Construction Company." We allow this oral amendment as there was no surprise to the plaintiff.

■ The main defense being based on the allegation that there was an oral contract subsequent to the written contract and modifying the terms of the written contract materially, it is the well-established law that the burden of proof is on the defendant to establish the modification. Cowen Co. v. Houck Mfg. Co., 2 Cir., 249 F. 285, 288; The Jobshaven, 2 Cir., 270 F. 60, 62; Smokeless Fuel Co. v. Western United Corporation, 4 Cir., 19 F.2d 834, 836; Redman v. Murrel, 117 La. 516, 519, 42 So. 49, 50; Balser v. Shreveport Oil Co., 163 La. 1008, 1010, 113 So. 356, 357; Wilson v. T. L. James & Co., 14 La.App. 593, 122 So. 137, 138. One of the supporting reasons for the shift in the burden of proof doubtless is that a modification of a written contract should be in writing to make it of equal certainty to and give it equal dignity with the original written contract.

Moreover, the burden of proof should weigh more heavily on the defendant in the instant case because the alleged modification through oral contract is without apparent consideration to the plaintiff. The Civil Code of Louisiana, Article 1893, provides: "An obligation without a cause, or with a false or unlawful cause, can have no effect."

Two months at $1,000 per month for the rent of the dragline is what the plaintiff is alleged to have agreed orally to take, when at the very time of this alleged second agreement he was already due the $2,000 under the written contract. This is unreasonable. By that time the dragline had been in use for two months and it appeared the levee job would take some considerable time for completion.

We have read carefully the testimony of the two partners, Mr. Barcelona and Mr. Allelo, as well as that of Mr. Frank Foil, their employee. Mr. Merrill met Mr. Barcelona at the latter's home and the two, later, left Baton Rouge together and visited the levee job at Hamburg, and the following morning, by arrangement, they met Mr. Allelo at the office of the partnership. Mr. Foil, the partnership bookkeeper, was present. We are not impressed

with the definiteness of statement nor with the certainty of declaration of the three witnesses for the defendant—Mr. Barcelona, Mr. Allelo and Mr. Foil. We grant that there might have been discussion and a conclusion reached that the rent of the total equipment—not only that of plaintiff, but that owned and rented by Allelo and that owned and rented by the partnership —would in the total prevent any possible profit on the contract; but, as aforestated, at the time of these conversations at the home of Barcelona, then again at the situs of the levee work, then again possibly at the office, about December 10 to December 18, 1939, Mr. Merrill was already due by the partnership the amount of $2,000.

The legal relation between the United States, the partnership, and Merrill, is against the defendant. The first contract was between the partnership and the United States; Merrill was not a party. Then the partnership contracted with Merrill as an individual and he never did become a member of the partnership, though it was part of this contract that he should get one-third of the profits if any were made. It is not a joint venture. Would Merrill have foregone the rent of his dragline beyond the already earned $2,000 because of a hope to receive the one-third of a possibly greater profit? He had no real interest to do so, except that he would have been moved by sympathy for the members of the partnership, when it appeared that the rains, delaying the work, made the original levee-building contract a sure source of loss. We do not discern him to be of that type.

Mr. Merrill denies categorically and positively that he entered into any oral modification of the contract. He says he called at the office of the partnership and wanted to collect the $2,000 that was due him—two months' rent of the dragline at $1,000 per month. He pressed for the amount of $2,000 being due then and no more, receiving the $1,000 paid, first remittance, in December, 1939.

The court conceives of how the members of the partnership might have thought it was all that was to be paid, ever. They probably engaged in wishful thinking. We do not believe Mr. Merrill meant to convey at all that he was willing to receive $2,000 altogether, being due that amount already, and that his dragline at $1,000 per month in rental value was to be free of rent in the future for a number of months. And the court feels that if there had been a real meeting of minds on the point that $2,000 was all that was ever to be paid, the two members of the partnership would have had it stated in writing for their protection. There was too much pointing against this sort of agreement from a practical viewpoint for them to rely upon its preservation and maintenance by an oral contract.

■■ All in all, because of the principles of law that the court must apply, because of the wavering and indefinite testimony of the three witnesses for the defendant, and because of the fact that there would seem to be no consideration for the supposed oral modification made by Mr. Merrill, we must allow the claim of plaintiff in the sum of $2,560 for the rent of the dragline, and in the sum of $45.46 for a balance due the Doherty Hardware Company on account of the levee work, paid by the plaintiff individually, and in the further sum of $24.68, paid by the plaintiff for incidentals in connection with his work as superintendent.

■ As to the counterclaims of the defendant permitted to be presented during the trial though not pleaded in the answer, we allow the cost of $98 for moving the dragline from where it was at the time it was rented to the job at Hamburg, as the written contract is silent and we believe a rented machine should be delivered to the place of intended use by the owner. Allelo was paid for the moving of his equipment, similarly rented to the partnership. We cannot allow credit for what appears to have been repairs customarily expected in the use of a rented dragline, classifying as wear and tear. This eliminates the item of $199.20. Repairs, however, made to replace substantial parts of the machine because of their obsolescence should be allowed. The substantial item allowed here is for the new cable, amounting to $324.20. The gas and oil items are disallowed; they represent legitimate expenditures as usual running costs.

■ It is obvious that the claim in reconvention by the defendant of $2,000, being the amount allegedly suffered as damage by the partnership because of plaintiff locking his dragline and refusing and denying the partnership the use of it to finish the contract, falls, as we believe the owner of the machine had the authority to terminate his rent contract by the month upon the nonpayment of the rental due.

Under the contract the language is "for the construction of this project for the price and sum of $1,000.00 per month"; and our interpretation of this, under Louisiana law, is that the non-payment of an accrued month's rent subjects the whole contract to cancellation.

Accordingly, judgment will be signed for the plaintiff and against the defendant in the sum of $2,207.94, with interest thereon at the rate of five per centum per annum from the 16th day of February, 1940, until paid, and for costs.